[Crim. No. 490.   First Appellate District.—January 20, 1914.]

# THE PEOPLE, Respondent, v. CALOGERO BALESTIERI, Appellant.

CRIMINAL LAW—HOMICIDE—PHOTOGRAPHS OF DECEASED—ADMISSIBILITY IN EVIDENCE.—In a prosecution for murder by beating, several large, vivid, striking, but correct photographs of the decedent's bruised and battered head and face, produced and identified by the physician who made the autopsy, are admissible in evidence, notwithstanding their gruesome and striking presentment of the features of the deceased may excite the horror and indignation of the jury.

ID.—PHOTOGRAPHS OF DECEASED—TAKING TO JURY ROOM.—It is not improper to permit the jury, after such photographs have been introduced in· evidence, to take them into the jury room.

ID.—TAKING EXHIBITS TO JURY ROOM—TIME AND MANNER OF OBJECTION THERETO.—Alleged error in permitting the jury to take exhibits to the jury room cannot be urged for the first time on appeal, where the only objection made at the trial was the objection previously made to their introduction in evidence.

ID.—CODE SECTIONS—LIBERAL INTERPRETATION IN PERMITTING EXHIBITS TO GO TO JURY ROOM.—Section 612 of the Code of Civil Procedure, which is identical in terms with section 1137 of the Penal Code, is to be construed as an extension and not a limitation of the common law relating to exhibits, and the court may permit the jury to take with them and use in their deliberations any exhibit, except depositions, where the circumstances call for it.

APPEAL from a judgment of the Superior Court of Marin County and from an order refusing a new trial.   E. T. Zook, Judge.

The facts are stated in the opinion of the court.

Martinelli & Greer, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—The defendant was convicted of the crime of murder, and sentenced to imprisonment for life.   He appeals from the judgment and order denying his motion for a new trial.

The following are substantially the facts of the case: On the sixteenth day of April, 1913, Ernest Reynaud and Milton

S. Clark, two deputy fish and game commissioners, acting upon information that the fish and game laws were being violated at or near Paradise Cove on the Marin County shore of the San Francisco Bay, went to that place for the purpose of intercepting and arresting violators of the law. They there found two fishermen, named Antone Balestieri and Salvatore Balestieri, brothers, and also uncles of the defendant, engaged in fishing with a net of the size of mesh prohibited by law, and placed them under arrest. Entering the launch these fishermen were using they started with them to San Rafael, the decedent Ernest Reynaud, taking his place in the stern and operating the tiller. They were presently overtaken by another launch in which was the defendant with two other men. The defendant, a young man of the age of twenty-two years, and also a fisherman, though not directly connected with his uncles in the business, had been fishing with his two brothers in the same vicinity. The men under arrest spoke and understood English very imperfectly, and hence asked this defendant to come aboard their launch and act as an interpreter. He was allowed to do so, and seated himself in the stern beside Reynaud. A dispute presently arose between the arrested men and the officers over the request of the former to have taken with them a net other than the illegal net with which it was claimed that they had been fishing, which request the officers refused. This led to an assault upon the arresting officers by the arrested men, during which several shots were fired by the deputies, killing Salvatore Balestieri and wounding this defendant in the hand, and during which also the deputy Reynaud was overpowered and beaten to death, and the deputy Clark driven overboard, narrowly escaping with his life. The defendant testified that he took no part in this affray other than to strive to prevent it and keep the peace. On the other hand the surviving deputy Clark testified that the defendant was one of the two men who attacked Reynaud, and by at least preventing him from making an efficient defense, against his other assailant, was the means of causing his death. After the affray was over the boat, containing the dead bodies of Reynaud and Salvatore Balestieri, was brought to San Francisco by the defendant and his uncle, Antone Balestieri. The latter then disappeared and has not since been found; but the defendant,

on arriving at the wharf about 9:30 o'clock on that night, and suffering from his wound, surrendered to the police, asked for a doctor, and told the story of the homicide, claiming to have been an innocent participant in the affray. The body of Reynaud was taken to the morgue, where the autopsy was held on the following morning, and several large and very vivid and striking, though correct, photographs were taken of the decedent's bruised and battered head and face. Upon the trial of the case these photographs were produced and identified by the physician who made the autopsy, and who testified with much of exact and gruesome detail respecting the extent and nature of the wounds and bruises which the features of the deceased displayed and which the photographs reproduced. The defense objected to the admission in evidence of these photographs, but they were admitted in evidence over the objection. The pistol of Reynaud, which had been found by the police in the boat and which appeared to have been broken during the affray, was also produced by the prosecution and admitted in evidence without objection. Upon the conclusion of the trial and charge, the jury retired, but presently requested that the exhibits, the photographs, and pistol, be allowed to be taken by them to the jury room. To the request for the photographs the defendant objected, basing his objection solely upon his prior objection to their admission in evidence. This objection was overruled, and the photographs and pistol sent to the jury room. The jury returned a verdict presently of murder in the first degree with the penalty of imprisonment for life. The judgment followed the verdict, and from it and from the order denying a new trial the defendant prosecuted this appeal.

The only two points urged by the counsel for appellant upon this appeal are: 1. That the photographs above referred to were improperly admitted in evidence; and, 2. That it was improper and highly prejudicial to allow them to be taken to the jury room, for the reason that their ghastly and gruesome and striking presentment of the features of the dead man was calculated to and did unduly excite the horror, indignation, and prejudice of the jury, and by so doing diverted their sober judgment from a dispassionate consideration of the facts of the case, which, as counsel for the

defendant contends, were not in themselves sufficient to justify the verdict.

As to the first objection, relating to the admissibility of the photographs in evidence, we find it without merit, for it has been settled by numerous and recent authorities in this state and elsewhere that photographs may be used upon the trial "to exhibit particular locations or objects where it is important that the jury should have a clear idea thereof, and the situation may thus be better indicated than by the testimony of witnesses, or where they will conduce to a better or clearer understanding of such testimony." (*People* v. *Rogers*, 163 Cal. 476, [126 Pac. 143], and cases cited.) It was important in this case that the jury should gain a clear perception of the precise manner in which the decedent came to his death. These pictures served to illustrate the testimony of the witness Clark as to the manner and form of the assault upon his deceased companion. The testimony of the autopsy physician, which was in some respects as striking and gruesome in detail as are these pictures, was properly admissible whether with, or, as in this case, without an objection; and the fact that its striking and gruesome detail might awaken feelings of horror and, perhaps, indignation in the minds of the jury, would not be a sufficient reason for the exclusion of such evidence; otherwise the more horrible a murder the more hampered would be the prosecution of those who had contributed the details of its horror.

The second objection of the defendant, and the one most seriously urged upon this appeal, is that these photographs ought not to have been sent to the jury room. The record discloses that the only objection urged at the trial to the order permitting the jury to take these exhibits, was the former objection as to their original admissibility in evidence. The precise words of the record upon this point are important and instructive. The record reads as follows:

"The Court. I am advised by the sheriff that the jury desires the exhibits, pistol and photographs of the deceased, to be taken into the room. If there is no objection an order will be made that they be taken to the jury room. Any objection?

"Mr. Boyd: No, your honor.

"Mr. Martinelli: We have none to the pistol, but having made an objection to the introduction of the photographs in evidence, we object to them.

"The Court: I mean, there is no objection other than the original objection you made?

"Mr. Martinelli: Yes, we will object to it. In other words, I do not want to be considered as waiving my objection made at the time of the trial.

"The Court: Any other objection?

"Mr. Martinelli: No other objection.

"The Court: Very well. That is all they ask for?

"The Sheriff: The pistol and the photographs.

"Mr. Martinelli: The record of course will show that they were sent to the jury room?

"The Court: Yes. The plaintiff's exhibits, the pistol and the photographs.

"Mr. Martinelli: Of course the record won't show our consent?

"The Court: It will show that you made no objection other than the original objection to the offer.

"Mr. Martinelli: Yes."

In view of the foregoing limitations upon the objection of the defendant at the trial we are of the opinion that his contention, for the first time made in this court, cannot be upheld. But aside from the form of the objection we think that photographs, when rightfully admitted in evidence, may properly be sent to the jury room. Photographs, pictures, diagrams, and like fixed representations to the eye, the details of which would otherwise be properly presentable to the ear in oral testimony, have been held to come fairly within the meaning of the word "papers" used in section 1137 of the Penal Code (*Chicago etc. E. R. Co.* v. *Spence*, 213, Ill. 220, [104 Am. St. Rep. 213, 72 N E. 796], and cases cited). But in addition to this, it has been instructively shown by Mr. Justice Henshaw in the recent case of *Higgins* v. *Los Angeles Gas & Elec. Co.*, 159 Cal. 651, [34 L. R. A. (N. S.) 717, 115 Pac. 313], that section 612 of the Code of Civil Procedure, which is identical in terms with section 1137 of the Penal Code, is to be construed as an extension and not a limitation of the common law rule relating to exhibits, and that "the court may permit the jury to take with them

and use in their deliberations any exhibit (except depositions) where the circumstances call for it.'' (See, also, *Gresser* v. *State* (Tex. Cr. App.), 40 S. W. 595; *Grayson* v. *State*, 40 Tex. Cr. 573, [51 S. W. 246]; *State* v. *Teale*, 154 Iowa, 677, [135 N. W. 408]; *People* v. *Morris*, 254 Ill. 559, [98 N. E. 975]; *Puryear* v. *State*, 50 Tex. Cr. 454, [98 S. W. 258].) The objection that the presence of these photographs in the jury room might tend to unbalance the jury in their deliberations is no stronger than the same objection to their original admission in evidence, especially in view of our conclusion that the evidence in the case was in itself sufficient to justify the verdict; and also in the absence of any affirmative showing that the jury were misled, or that the exhibits were otherwise put to any improper use.

The judgment and order denying a new trial are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 18, 1914.