[Crim. No. 1367. First Appellate District, Division One.—July 28, 1927.]

THE PEOPLE, Respondent, v. PETER SCOTT, Appellant.

Walter McGovern and A. M. Dresow for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant was convicted of robbery in the first degree and has appealed from the judgment of conviction and the order denying his motion for a new trial, one of the grounds of appeal being the alleged insufficiency of the evidence to sustain the verdict.

The essential facts disclosed by the evidence are as follows: About the hour of 10:30 o'clock on the night of July 15, 1926, one Max Pietsch, while walking along Tehama Street, between Fifth and Sixth Streets, in San Francisco, was assaulted by three men, knocked down, and robbed of a diamond stick-pin and a wallet containing $150 in currency, one of the robbers using an automatic pistol in perpetrating the crime. After tearing from Pietsch's neck the tie to which the diamond pin was fastened and taking his wallet containing the currency, the robbers warned him under penalty of death to lie still until they made their escape. One of them then fled in one direction and the

other two in another. Pietsch arose from the ground immediately and took up the pursuit of the single robber, following him down the street a short distance when he was captured by a police officer named LeBaron, whose attention had been attracted to the scene by the alarm given by Pietsch as he chased the robber down the street. While awaiting the arrival of the police patrol wagon, the captured robber, who proved to be a man named Lane, dropped Pietsch's wallet, which was empty, and later, when searched at the prison, Pietsch's mutilated necktie and the stick-pin were found in his possession. Shortly after his capture, Lane implicated a man referred to by him as "Scotty" in the commission of the crime; and thereupon several police officers, accompanied by Lane and guided by his directions, drove to the hotel where defendant resided. In response to a knock at the door of the defendant's room he inquired from within: "Who is there?" to which Lane replied, "Me"; whereupon defendant opened the door and the officers and Lane entered the room. After some preliminary conversation Lane declared in the presence and hearing of the defendant: "This is one of the men that was with me on the hold up"; to which statement defendant made no reply. The officers then told defendant, who was in his nightclothes, to dress, and while doing so they searched his room, finding a loaded automatic pistol and a box of cartridges alongside of it, in the top drawer of the bureau; also a wallet containing $80 in currency. Defendant admitted the ownership of the pistol, and when asked his purpose in possessing it merely shrugged his shoulders. At the trial he stated that the $80 in currency had been given to him by friends to help defray the expense of an accident which had recently befallen him. During the conversation in the room Lane was asked in defendant's presence and hearing "who used the gun" in perpetrating the robbery, and he said that the defendant had, and that the gun found by the police was the one defendant had so used, to which statements the defendant made no reply.

Shortly afterward Pietsch was summoned to defendant's room for the purpose of ascertaining whether he could identify Scott as one of the robbers. When he arrived there a number of police officers were present, three of them being dressed in civilian clothes and standing near the defendant.

As Pietsch entered the room he was told in substance by one of the officers to point out the other man who had robbed him, if he saw him in the room. Pointing directly at Scott, Pietsch said: "That is the man here." The defendant remained silent. Pietsch again identified the defendant at the trial, declaring that he was the robber who had used the pistol, and that the pistol found in defendant's room resembled the one used in the robbery. Other circumstances were established by the prosecution tending to prove that Lane and Scott some time previously had worked together on a construction job in Alameda County, and, consequently, knew each other prior to the robbery.

We are of the opinion that the foregoing evidence is legally sufficient to sustain the verdict against the defendant. True, it is not without conflict, the record showing in this respect that at times other than those above mentioned and also during trial the defendant denied any participation in the crime or of ever having any previous acquaintanceship with Lane. As a witness in his own behalf he testified in substance that he had denied all accusatory statements when made, or if he did not, that he did not understand the import of the statements, being a foreigner with only a limited knowledge of the English language. As a further defense defendant produced witnesses by whom he sought to establish an alibi; and, regarding the case proved against him by the prosecution, he contends that Pietsch's advanced age, defective eyesight and the circumstances under which he observed the features and appearances of the man who wielded the pistol, being only semi-conscious at the time, were such as to make it impossible for him to afterward identify the defendant as being that man. Lane, who was separately tried, was also a witness for the defendant, and, besides denying having made many of the accusatory statements attributed to him by the police, testified in effect that when he informed the police that he had been aided in the perpetration of the crime by a man named "Scotty," he did not refer to the defendant, but to another man; and, although admitting that he and defendant had been employed at the same time on said job in Alameda County, claimed that he had never seen the defendant to know him until they met in the latter's room, in the presence of the police officers, after the robbery. He further testified in

substance that by coincidence the "Scotty" he had referred to had been living at the hotel where the defendant was rooming, which accounted for the fact that he directed the police to that particular hotel.

It is apparent that the above facts which defendant sought to establish in defense of the charge only raised a conflict in the evidence; and since there is substantial proof in the record to support the verdict of the jury, its decision as to the defendant's guilt must be accepted as controlling, the members thereof being the sole and exclusive judges of the evidence, the credibility of the witnesses, and the weight that shall be given to their testimony. In this latter connection it may be stated that Lane admitted while testifying that he had previously served two terms in the penitentiary; and, besides, the character of his testimony was such as to affect his credibility as a witness.

Defendant assigns as error the admission of Pietsch's testimony regarding his identification of defendant at the latter's room on the night of the robbery, claiming that there is no affirmative testimony showing that defendant heard. or understood the statements made by Pietsch at that time; and that, therefore, he was not afforded an opportunity to make a reply thereto. We find no merit in the point. In *People* v. *Yeager*, 194 Cal. 452 [229 Pac. 40], it is said: "It is for the court in the first instance to determine whether the import of the statements is such that it would furnish a foundation for proof of conduct, *and it is then for the jury to decide whether the accused was aware the statements were made*, whether, under all the circumstances shown, they called for a disclaimer, whether the accused did reply to them, and whether if he did not do so, such failure showed criminal intent or a consciousness of guilt. If these propositions of fact are resolved in favor of the prosecution the item of conduct should be given the effect to which upon the entire case it is entitled." (Italics ours.) The circumstances under which the statements here were made, including the location of the parties in the room, and the fact that defendant heard and understood other portions of the conversation which was being carried on in the room at that time, were sufficient, we think, to justify the admission of said evidence, and to warrant the jury in concluding there-

from that the statements complained of were heard and understood by the defendant.

Nor do we find any error in admitting the rebuttal testimony of Police Officer Dorman as to the statements made by Lane after he had been captured and before going to defendant's room, regarding defendant's connection with the crime, for the reason that Dorman's testimony was in direct rebuttal of that given by Lane as a witness for the defendant to the effect that prior to meeting defendant in the latter's room after the robbery he had never known of or seen the defendant.

The prosecution was allowed to prove by the testimony of a police officer, subject to defendant's objection, that on the morning following the robbery Lane and defendant were interrogated by members of the department in the assembly room of the detective bureau in the presence and hearing of each other, at which time Lane reiterated the charge that defendant had assisted in the commission of the robbery, and that defendant, upon being asked whether Lane's statement was true, replied that he had never seen Lane prior to the latter's visit to his room the night before in company with the police officers. Defendant contends that the evidence mentioned should have been excluded. With reference to Lane's statement, it is apparent that the same was inadmissible as a declaration of a co-conspirator because it was made after the consummation of the conspiracy and not in furtherance thereof (*People* v. *Winters,* 125 Cal. 325 [57 Pac. 1067]); and it would seem that it was also incompetent to prove guilty conduct on the part of the defendant because inferentially at least it was denied by defendant's declaration that up to the time Lane came to his room with the police he had never seen him (*People* v. *Ayhens,* 16 Cal. App. 618 [117 Pac. 789]; *People* v. *Teshara,* 134 Cal. 542 [66 Pac. 798]). However, the rule as to accusatory statements is subject to the qualification that such testimony is admissible, notwithstanding a defendant's prompt and full denial of guilt, if, in addition and in an attempt to avoid the effect of the accusation, he makes a statement which is calculated to deceive or is subsequently shown to be false. (*People* v. *Cole,* 141 Cal. 88 [74 Pac. 547]; *People* v. *Ayhens, supra.*) Circumstances were established here tending to prove that the reply made by

defendant to the effect that he had never seen Lane until after the robbery was not true, and that in fact he had known Lane while working on the construction job in Alameda County. Moreover, the record shows, as already pointed out, that on two other occasions during the trial Lane's accusatory statements to the same effect were rightfully placed before the jury, once by witnesses in describing the occurrence in the defendant's room on the night of the robbery and again by the witness Dorman in rebuttal when he related what Lane had said after he was captured and before going to the defendant's room. That being so, it cannot be successfully maintained, we think, that the evidence complained of operated as a controlling influence with the jury in determining the defendant's guilt, or that its admission, if error, was prejudicial.

The evidence proving that the stolen property was found upon Lane's person after his arrest was properly admitted, defendant's connection therewith being established by proof showing that he was an accomplice in the commission of the crime. (*People* v. *Ward,* 77 Cal. 113 [19 Pac. 373].)

The trial court refused to give an instruction proposed by defendant to the effect that a juror in entertaining a reasonable doubt as to defendant's guilt should not be influenced in voting to convict by the mere fact that a majority of the jury was in favor of such a verdict. The instruction should have been given (*People* v. *Dole,* 122 Cal. 486 [68 Am. St. Rep. 50, 55 Pac. 581]); but, as held in a number of cases, the refusal to give such an instruction does not in itself constitute reversible error. (See *People* v. *Grahle,* 67 Cal. App. 183 [227 Pac. 227], and cases cited therein.) The instruction given by the court relating to the presumption of innocence, which defendant challenges, although departing somewhat from the usual form by the inclusion therein of the phrase "independent of evidence," cannot be said to have misled the jury, we think, for the reason that the objectionable phrase was followed immediately by a correct and clear statement of the law that "every person is presumed to be innocent until he is proven guilty," which is almost identical with the language used in the code section (Pen. Code, sec. 1096). The presence

of this latter statement of the law differentiates the instruction in the present case from the one held to be erroneous in the case of *People* v. *Maughs,* 149 Cal. 253 [89 Pac. 187], upon which defendant relies.

We are unable to sustain defendant's assignments of misconduct on the part of the trial court. The asking of the defendant while a witness of a series of successive questions before a single answer was given is easily explained by the fact that defendant was not thoroughly conversant with the English language. Defendant did not deem the matter of sufficient importance at the time it occurred to base an assignment of error thereon. Nor was it irregular for the court, in the absence of a request from the jury, to direct that the exhibits in the case be delivered to the jury before it retired. If the jury had made such request it would have been entitled to the possession of them (*People* v. *Balestieri,* 23 Cal. App. 708 [139 Pac. 821]; *People* v. *Hower,* 151 Cal. 638 [91 Pac. 507]); and, moreover, in directing the delivery of the same to the jury the court said that if there was no objection the exhibits would at that time be turned over to the jury so as to avoid returning the jury into court in case it afterwards called for them; and no objection was made to this being done.

 In amplifying the code section defining robbery in the first degree in its charge to the jury, the court did not commit error. It is not claimed that the instruction as given did not correctly state the law, and, surely, it is not error to clarify a code section relating to the degrees of crime so that the jury may more readily understand the section and apply it, in the event the defendant be found guilty.

After having fully considered the legal points presented and carefully reviewed the entire record including the evidence, we cannot say that the defendant has been unfairly or unjustly convicted. The judgment and order appealed from are therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.