[Crim. No. 1599. Third Appellate District.—July 15, 1938.]

THE PEOPLE, Respondent, v. LUCIAN E. WALTHER, Appellant.

584

Wallace T. Rutherford for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THE COURT.—The appellant was jointly indicted with another defendant on six counts for alleged violations of the Corporate Securities Act and for grand theft. The indictment against the codefendant was dismissed. A demurrer to each count of the indictment was overruled. The appellant was convicted of four counts of the indictment and acquitted of the remaining two counts. On motion for a new trial the causes were dismissed as to two other counts. The motion for a new trial was denied as to the fifth and sixth counts of which the appellant was convicted. The fifth count charges the appellant with,

"Violation of the Corporate Securities Act of the State of California, in that Lucian E. Walther and . . . knowingly, unlawfully, and feloniously conspired together to violate the Corporate Securities Act . . . by conspiring to, and did sell to, Margaret Holst, for a valuable consideration, in the County of Napa, State of California, on or about the 11th day of September, 1935, . . . a security of their own issue, namely, a certificate of interest in a profit sharing agreement, . . . without having permission of the Corporation Commissioner of the State of California so to do."

The sixth count contains the following language:

"The Grand Jury of the County of Napa, State of California, further hereby accuses Lucian E. Walther and . . . of a felony, towit, grand theft, in that Lucian E. Walther . . . knowingly, feloniously, and unlawfully sold a security for value to Margaret Holst, in the County of Napa, State of California, on or about the 11th day of September 1935, upon false representations and under trick and device with the intent of defrauding said Margaret Holst, in the sum of Three Hundred and Ninety Dollars ($390.00), lawful money of the United States, and appropriated the same to their [his] own use and benefit."

It is asserted that neither the fifth nor the sixth count of the indictment states a public offense; that the verdicts and judgment are not supported by the evidence; that the jury received and considered evidence outside of the court proceedings; that the court erred in receiving and rejecting

testimony and in giving to the jury and refusing certain instructions, and that the district attorney was guilty of prejudicial misconduct during the trial of the cause.

■ The sixth count of the indictment clearly fails to state a public offense. The gist of the offense sought to be charged in that count is the procuring of $390 from Margaret Holst by means of deceit and fraud, contrary to the provisions of section 532 of the Penal Code. It fails to specify any act or statement of the defendant constituting the alleged fraud. ■ It is not sufficient to charge a crime based on fraud or deceit in the language of the statute. The allegations of the information or indictment are wholly insufficient when they merely charge the accused with procuring the money or property "by false pretenses". On the contrary it is invariably necessary to specify the fraud relied upon with such particularity as to enable the court to determine whether it is of such a nature as to fall within the statute, and accurate enough to inform the accused of the particular charge which he is required to defend against. (25 C. J. 623, sec. 56; 12 Cal. Jur. 464, secs. 16 and 17; 11 R. C. L. 857, sec. 39; *People* v. *McKenna*, 81 Cal. 158 [22 Pac. 488].) In the text of 11 Ruling Case Law, *supra,* it is said:

"It (the indictment) must aver all the material elements of the offense, and hence must show what the false pretenses were; that they were made or authorized by the defendant; that they were false and fraudulent, and deceived the prosecutor; and what was obtained by and under them; or, as differently expressed, it must set out the pretenses and the scienter, and that by means of the pretenses, which were false, the defrauded party was induced to part with the property described."

In the case of *People* v. *McKenna, supra,* a judgment of conviction was reversed and the court was directed to dismiss an information which was couched in almost the identical language employed in the present indictment. In that case there was imposed neither a demurrer to the pleading nor a motion in arrest of the judgment. The court there said:

"It matters not that no objection is made by demurrer. Objection may be made at any time, because it goes to the substance of the complaint or indictment. The question whether a thing has been done fraudulently is a matter of law, and an allegation of fraud in general terms presents

no issuable fact. (*Meeker* v. *Harris*, 19 Cal. 278, 289, 290 [79 Am. Dec. 215]; *Triscony* v. *Orr*, 49 Cal. 612, 617; *Sacramento Sav. Bank* v. *Hynes*, 50 Cal. 195, 202.)''

The sixth count of the indictment in this case therefore states no cause of action and the court was without jurisdiction to try the appellant on the charge of fraud.

█ We are of the opinion count five of the indictment states a good charge against the defendants for conspiring to sell and for selling to Margaret Holst a security of their own issue in the form of ''a certificate of interest in a profit sharing agreement'', without having first procured from the corporation commissioner a permit so to do, contrary to the provisions of the Corporate Securities Act of California. (Stats. 1917, p. 673, and amendments thereto; 2 Deering's Gen. Laws 1931, p. 1924, Act 3814.)

The fifth count states a public offense in the precise language of the statute in plain language sufficient to inform a person of common understanding of the exact offense with which the appellant is charged. It sufficiently conforms to the requirements of sections 950, 952 and 959 of the Penal Code. It charges that the defendants on September 11, 1935, in Napa County, California, did conspire to sell and ''did sell to Margaret Holst, for a valuable consideration, . . . *a security of their own issue,* namely, *a certificate of interest in a profit sharing agreement,* . . . without having permission of the Corporation Commissioner of the State of California so to do.'' Section 2, subdivision 7, of the Corporate Securities Act defines the word ''security'' to include ''any stock, bond, note, treasury stock, debenture, evidence of indebtedness, certificate of interest or participation, *certificate of interest in a profit sharing agreement*'', etc.

We are of the opinion the allegations of the information which were held to be fatally defective in the case of *People* v. *Davenport,* 21 Cal. App. (2d) 292 [69 Pac. (2d) 862], upon which the appellant relies, may be distinguished from the language employed in the fifth count of the indictment in the present case. In the Davenport case the information merely alleged that the defendant issued and sold, without a permit, ''a security for value, to-wit, *an investment contract*''. The court there said:

''Since in the generic sense of the word every contract is an investment contract, and it is perfectly lawful to sell,

assign, or otherwise transfer or dispose of one's rights in or to any investment contract without first securing a permit from the commissioner of corporations of the State of California, . . . we must, in the absence of appropriate pleadings, assume that the contract described in this count was one, the rights of which could lawfully be sold without the seller first obtaining a permit from the commissioner of corporations.''

While it may be true, as the court says, that in the generic sense all contracts are in the nature of investments, and that the charge of selling a mere *investment contract* is not in conflict with the provisions of the Corporate Securities Act, the statute specifically prohibits the sale of ''certificate of interest *in a profit sharing agreement*''. In other words, when a ''certificate of interest'' is issued in a ''profit sharing agreement'' it is specifically designated by the statute as ''security'' which may not be lawfully sold without a permit from the corporation commissioner. Count five of the indictment in the present case is distinguishable from the Davenport case, and we think it is sufficiently specific to inform the defendants of the identity of the security which they are charged with conspiring to sell to Margaret Holst without a permit.

Assuming that count five of the indictment adequately charges the appellant with conspiring with George W. Webb to sell unlawfully ''a certificate of interest in a profit sharing agreement'' and also with the actual sale of that security contrary to the statute, we are still compelled to eliminate therefrom the portion which charges him with actually selling the security for the reason that he was formally acquitted of that very charge by the same jury at the same trial. Count four, of which the appellant was then acquitted, separately charged him with the same offense in almost the identical language which was contained in the fifth count, to wit, that, on September 11, 1935, he sold to Margaret Holst, without a permit, a security of his own issue in a profit sharing agreement. The two verdicts upon that issue of the alleged actual sale of the security are inconsistent and absolutely irreconcilable. In so far as the verdict purports to find the appellant guilty of actually selling to Margaret Holst the specified security, it is null and void, and should therefore be disregarded.

■ Moreover, the evidence indicates that an actual sale of the specified security did not occur. There was never an actual transfer of title to the certificate. Margaret Holst testified in that regard: "Q. Did you get any stock certificate? A. No. Q. Did you ever see any [certificate of] interests in this matter? A. No sir."

Assuming, as the attorney-general contends, that a sale of profit sharing interests may occur without actually transferring the certificates thereof, we have searched in vain for evidence of that fact. Our attention is not called to any evidence supporting the contention that the designated securities were actually sold.

We are therefore of the opinion the verdict of the jury finding the appellant guilty of selling a specified security of his own issue is not supported by the evidence.

This leaves for our consideration only the verdict with respect to that portion of the fifth count which charges the appellant with conspiring with George W. Webb, contrary to the provisions of section 182 of the Penal Code to commit the crime of violating the Corporate Securities Act, by attempting to sell securities without a permit.

■ It is unsatisfactory that the conviction of one of two conspirators to commit a crime should depend so completely as does the present case upon the testimony of the coconspirator, Webb, against whom the indictment was finally voluntarily dismissed by the prosecuting officer. It may be true the evidence indicates that the appellant was guilty of conspiring with Webb to defraud Margaret Holst of her money by means of false pretenses, but there seems to be a total absence of evidence of a conspiracy to violate merely the Corporate Securities Act by selling securities without a permit. If the appellant is guilty of the last-mentioned offense, his coconspirator is equally culpable, and under such circumstances the court should carefully scrutinize his evidence to see that the wholesome rule with respect to proving the facts constituting a conspiracy independently of the coconspirator's admissions has been complied with.

We may assume that the district attorney has a right to arbitrarily select one of two coconspirators to whom he may tender immunity from prosecution in reward for his state's evidence against his colleague, but such evidence is open to suspicion lest the temptation thus to escape a threatened

penalty of law may result in unreliable testimony. Under such circumstances the evidence of a coconspirator should be examined with great care. ■ When a codefendant who is a coconspirator has been offered immunity from prosecution in reward for his testimony, the cause should be promptly dismissed against him. Otherwise, the maintenance of the action against him throughout the trial may serve to intimidate the witness and furnish an inducement for him to color his testimony. Moreover, retaining a person as a party defendant throughout the trial, who has been promised immunity from prosecution in reward for his evidence may become a mere subterfuge to avoid the necessity of adhering to the established rule that the fact of the existence of a conspiracy may not be proved by the admissions of a coconspirator.

We shall assume that the voluntary dismissal of a criminal charge against one of two coconspirators to commit a crime will not necessarily invalidate a verdict convicting his associate therein, although the procedure under such circumstances is not ordinarily very satisfactory. It has been held that a voluntary dismissal of a criminal case against one of several coconspirators does not invalidate the verdict of conviction against the others. In the case of *Harrison* v. *United States*, 7 Fed. (2d) 259, it was held that a *nolle prosequi* as to one of six defendants charged with conspiracy did not affect the result or prevent a conviction of the other parties thereto. (97 A. L. R. 1312, note.)

■ In considering the charge of conspiracy to commit the crime of violating the Corporate Securities Act by trying to sell to Margaret Holst certain securities without a permit, of which the appellant was convicted, we are of the opinion the court erred in overruling the numerous objections to the testimony of George W. Webb, the coconspirator, on the ground that the fact of the existence of the alleged conspiracy had not been first established.

It is fundamental that the fact of the existence of a conspiracy to commit a crime must first be established before the declarations of a coconspirator with relation thereto become competent or admissible. When such declarations are prejudicial, as they certainly are in the present case, their admission in evidence necessitates a reversal of the judgment. (Code Civ. Proc., sec. 1870, subd. 6; *People* v. *Doble*, 203

592

Cal. 510, 517 [265 Pac. 184]; *People* v. *Linde*, 131 Cal. App. 12, 19 [20 Pac. (2d) 704]; 5 Cal. Jur. 517, sec. 21.)

■ It will be observed that the fifth count of the indictment, which is the only one under which a verdict of guilty, under the circumstances of this case, could possibly be sustained, does not charge a conspiracy to defraud Margaret Holst by procuring her money by false pretenses. It merely charges a conspiracy to violate the Corporate Securities Act by selling, or at least trying to sell to her ''a security of their own issue'', represented by a certificate in a profit sharing agreement, without having procured a permit therefor from the corporation commissioner. That specific charge does not appear to be supported by the evidence. After a diligent examination of the lengthy record, we are unable to find any substantial evidence of a conspiracy to sell a certificate in a profit sharing agreement, issued, or to be issued by the alleged conspirators. We are directed to no evidence which does support that charge. We are therefore of the opinion the evidence is insufficient to support the verdict on that particular charge.

It is quite evident from a critical examination of the record, in view of the instructions which were given to the jury, and the evident theory upon which the case was tried, that the prosecution did not rely upon proof of a conspiracy to unlawfully sell securities, but rather upon evidence that the defendants defrauded Mrs. Holst of her money by false and fraudulent representations. The evidence of the proof of a conspiracy to defeat the Corporate Securities Act by selling securities without a permit is most unsatisfactory, if, indeed, it is not entirely lacking.

In view of our previous conclusions which require a reversal of the judgment it is not necessary to review the numerous instructions which were given and refused in this complicated case, to which the appellant objects. Most of them have no bearing on the principles affecting the charge of conspiracy.

There seems to be little merit in the charge of alleged misconduct of the district attorney. ■ The fact that one of the jurors lagged behind his associates in going to and coming from the courtroom during the progress of the trial does not constitute such a separation of the jury as will require a reversal of the judgment on that account. It is

not contended the jurors were ever out of the sight or actual custody of the sworn officer of the court, or that any of them were improperly approached or interviewed by other individuals. The circumstances of this case do not constitute an unlawful separation of the jury. (16 Cal. Jur. 1166, sec. 2675.)

 Nor does the record indicate that the jurors received or considered evidence obtained out of the presence of the court. It is true that an affidavit was filed on motion for a new trial in which it is asserted that "certain documents and papers unknown to this affiant" were delivered to the jury outside of court. This affidavit was not contradicted. It does not appear what the nature of the documents was which were delivered to the jury. In the absence of evidence to the contrary we must assume that both the jurors and the officer in charge of them were obedient to the admonitions of the court, and that the jury rendered its verdicts solely on the evidence regularly adduced in open court. In support of that presumption we may assume the documents which were handed to the jurors had no application to the case on trial, or that they consisted of pleadings or exhibits which had been formally received in evidence during the progress of the trial. If that is not the fact it would have been easy to introduce evidence of the nature of the documents. It was not reversible error for the jurors to secure and consider in their deliberations the pleadings or the exhibits which had been previously received in evidence during the trial. They had a right to further consider such evidence. (16 Cal. Jur., p. 1083, sec. 2543, and p. 1171, sec. 2679; *People* v. *Balestieri,* 23 Cal. App. 708 [139 Pac. 821].)

The judgment and the order are reversed.