THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ANTONIO CASTRO PÉREZ, Defendant and Appellant.

No. 13597. Argued November 9, 1950.—Decided January 31, 1951.

*César Andréu Ribas* for appellant. *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Antonio Castro Pérez was accused of killing Cristino Colón Matos, alias Ladrillo, on or about October 14, 1947. The theory of the People was that during most of that day the appellant had been riding in a taxi accompanied by Michel Matienzo, Rafael Cuevas, and Tutti Coll Carpintero looking for Colón Matos; that the latter spent that day in the house of Ramona López in the jurisdiction of Carolina and that he returned therefrom towards the Copacabana Club together with Andrés Torres, Harry Lake Penn, and Cristóbal Agosto Ferrán; that after the automobile of Colón Matos and his companions entered Wilson Street and turned to Duffaut Street, the automobile pulled up to his right, next to the sidewalk of the Paramount theater; that Colón Matos was lying down in the back seat of the automobile because he had been drinking liquor and had been asleep during the entire trip; that when they stopped at the place referred to they woke up Colón Matos, who stepped out of the automobile in his shirt sleeves, rubbing his eyes with a handkerchief; that then the defendant Antonio Castro Pérez, who had just left a taxi, appeared and approaching rapidly to Colón Matos told him: "Look, Cristino . . ."; that Colón Matos paused without suspecting what was going to happen and turned around, and then the defendant, without any provocation or words except those above mentioned, fired several shots at Colón Matos killing him and that right after that Castro Pérez boarded the taxi again and fled at great speed.

Defendant's theory, as stated by one of his attorneys before the jury, was that the defendant acted in self-defense.

The trial lasted many days, both the prosecution and the defense offering abundant oral and documentary evidence. After hearing the evidence, the arguments of the parties and the essential instructions, the jury rendered a verdict of guilty of murder in the second degree, whereupon the court sentenced Castro Pérez to serve from 20 to 30 years' imprisonment in the penitentiary, at hard labor. He appealed from that judgment and in support of his appeal he assigns seven errors which will be discussed in the order that they appear in his brief.

The appellant contends in the first place that the lower court "erred in permitting the presentation of evidence of two alleged offenses of extortion claimed to have been committed by the defendant . . ." Said actions pending trial in that same court. It appears from the record that while the Prosecuting Attorney was examining one of the gentlemen of the jury in order to determine whether he should be challenged or not, that officer asked said juror to give his opinion of an "extortionist." The defense objected to such question in the presence of the jury and the court decided that said question could be discussed later. It was so done, the parties subsequently meeting in the judge's chambers and setting forth their respective points of view, whereupon the court concluded that the defendant had not been prejudiced at all. The defense requested the reconsideration of said ruling and upon the same being denied an exception was taken.

It appears likewise from the record that prior thereto the defense had already asked one of the jurors whether he had not read in the newspapers about certain extortion cases ". . . that the prosecuting attorneys said that they would arrest and accuse so-and-so." Also, that subsequent to the incident mentioned in the first place, the defense itself asked several gentlemen of the jury whether they had read any information in connection with any offense of extortion and that later, during the trial, the defense itself referred to

extortionists and to the offense of extortion and asked some of the witnesses whether they had paid money to Antonio Castro Pérez induced "by fear"; that the defendant himself was asked by the Prosecuting Attorney, without objection by the defense, whether he had been arrested for an offense of extortion by order of Prosecuting Attorney Gerena Bras and that he answered affirmatively. It also appears from the transcript of the evidence that while Francisco María Quiñones, a witness, was testifying, the Prosecuting Attorney asked him whether ". . . at any time you have paid a weekly rental to Antonio Castro Pérez," the witness replying that "once I gave him $40 weekly . . . well, by fear"; and that the defense far from objecting to said question and answer asked the witness himself whether "do you remember having come to the office of the Prosecuting Attorney prior hereto, summoned by my colleague Viera Martínez, and having said that you had never paid any money to Antonio Castro Pérez induced by fear?" It therefore becomes manifest that the defendant, in asking questions about extortionists and extortion, waived his original exception. *People* v. *Cirino*, 69 P.R.R. 488, 493. Having waived his exception, the appellant can not raise now that question on appeal in this Court. *People* v. *Figueroa*, 59 P.R.R. 909, 910; *People* v. *Miranda*, 56 P.R.R. 574, 578; *The People* v. *Silva*, 17 P.R.R. 577, 578. Moreover, at the request of the defendant himself the court charged the jury to the effect that ". . . the gentlemen of the jury . . . must not take into account for any purpose whatsoever any statement made regarding any offense of extortion against the defendant . . ." Under those circumstances the first error was not committed.

▪ The appellant urges in the second place that the lower court erred in refusing to admit in evidence the record of the Federal Bureau of Investigation under the signature of J. Edgar Hoover to the effect that the decedent Colón Matos had been convicted of armed robbery in New York City. There is no such error. The document offered in

evidence was clearly inadmissible. The best evidence of a judgment of conviction against the deceased Colón Matos would have been a copy of said judgment duly authenticated by the proper officer of the court which entered it, *People v. Valentín,* 35 P.R.R. 109; *People v. Reinhart,* 39 Cal. 449; Wharton's Criminal Evidence, Vol. I, 11th ed. 1935, p. 630, § 395; *Op. cit.* Vol. 3, p. 2197, § 1320; 20 Am. Jur., p. 376, § 420. And the reason for not offering the primary evidence was not shown to the court in any manner whatsoever.

■ The court did not err either "in not permitting the defense to present evidence on the dangerous character and bad reputation of the companions of the deceased." As has been indicated the defendant pleaded self-defense. His evidence tended to show that during the afternoon of that day he, together with the afore-mentioned individuals, had been trying to get in touch with several persons who would serve as his witnesses in different actions pending against him in the Municipal Court of Río Piedras, because he had assaulted Miguel Soto Zaragoza some weeks previously in one of the hippodromes of that jurisdiction; that between half past ten and eleven o'clock that night the defendant, who had left at the Sixto Escobar Stadium the friends accompanying him, got out of the taxi and walked along Duffaut Street toward the house of Julio Toro Luzunaris, one of the witnesses he was looking for; that as he entered said street he saw three men, Colón Matos among them; that the latter said: "Look, there's that cad"; that Cristino fired at him at once, firing a second shot at him, and that then he fired three or four times at Cristino. However, there is nothing in the evidence for the prosecution or for the defense showing that the companions of Colón Matos attacked, or made any attempt to attack, the defendant at all.

When a defendant pleads self-defense, if offered, evidence may be admitted tending to show the quarrelsome character of the victim by means of specific acts of violence.

*People* v. *Rivera*, 67 P.R.R. 259, 264; *People* v. *Cruz*, 65 P.R.R. 160. Nevertheless, evidence which tends to prove the quarrelsome character of the companions of the victim is only admissible when there is evidence showing that they in some way participated in the alleged attack of the decedent against the defendant. 64 A.L.R. 1047; 26 Am. Jur. 379, § 350; Warren on Homicide, Vol. 2, p. 790, § 230; Wigmore on Evidence, Vol. II, 3d ed., p. 52, § 246 (*c*) ; Abbott's Criminal Trial Practice, 4th ed., p. 888; *State* v. *Kelly*, 195 N. W. 614, 616; *Tiffany* v. *Commonwealth*, 15 Atl. 462. Since there is no evidence at all tending to show that Colón Matos' companions participated in the alleged attack of the latter against the defendant, the court *a quo* acted correctly in refusing to admit evidence regarding the bad reputation of such companions.

 The defendant contends also that the lower court erred "in permitting the jury to disperse and separate, some of its members going together with the marshals to a picnic or social activity in the Cubuy ward of Canóvanas while under the custody of the Marshal of the court before the action had been submitted to them for decision."

After the trial was under way the court did not permit the jury to disperse, admonishing them at all times to remain together and under the custody of the marshals when they took their meals or went to bed. After having been working in the trial for several days and upon recessing on a Saturday afternoon the court, addressing the jury, said: "We shall recess until Monday at nine o'clock in the morning. I regret to tell the gentlemen of the jury that they must no separate or speak with anyone nor among themselves regarding the facts of the case until the same has been finally submitted to you for deliberation; you must not allow any person whatsoever to approach you for conversation, not even the marshal. The court rules that any of you who may wish to go home to see your children may do so provided you are accompanied by a marshal." Next Monday, while the marshals were being examined in open

court as to the manner in which they were keeping the jury, one of the attorneys for the defense asked Deputy Marshal Carreras whether he had participated in the picnic which took place in the house of one of the jurors. Carreras answered that the next preceding Saturday the jurors Conde and Ocasio went home accompanied by Marshal Rodríguez, that yesterday Sunday, he had accompanied the jurors Correa and J. A. Rodríguez to their respective houses, and that almost all the others had gone to the house of the juror Natividad Pagán to eat a roast pig. From a thorough examination of the matters by the court it appears that what happened in brief was that, accompanied by the marshal and a deputy marshal, several jurors went to the house of Natividad Pagán, a juror, to have lunch; that they had roast pig and did not drink any liquor whatsoever; and that aside from the jury and the marshals, the only outsiders were Pagán's wife and his daughters. The evidence did not show, however, that they discussed the case on trial or that anyone approached the gentlemen of the jury to speak to them in connection therewith. The court concluded that its order "to the effect that the jury be at no time out of the marshals' reach" had not been disobeyed.

Pursuant to § 260 of the Code of Criminal Procedure:

"Section 260.—The jurors sworn to try an action may at any time before the submission of the cause to the jury, in the discretion of the court, be permitted to separate or be kept in charge of a proper officer. The officer must be sworn to keep the jurors together until the next meeting of the court, to suffer no person to speak to them or communicate with them, nor to do so himself, on any subject connected with the trial, and to return them into court at the next meeting thereof."

And pursuant to § 261 of that same Code:

"Section 261.—The jury must also, at each adjournment of the court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves, or with anyone else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."

Despite the fact that pursuant to the foregoing provisions the court could authorize the jurors, after having been sworn to try the action, to separate, as has been indicated, it did not suffer them to disperse. On the contrary it ordered them to remain at all times under the immediate custody of the marshals. It authorized them, however, under the specific conditions it set forth, to separate, but always under the immediate custody of the marshals.

Whether, once the trial has begun, the jury shall be allowed to separate rests entirely in the sound discretion of the trial judge. Sections *supra*, and 8 Cal. Jur., p. 383, § 414; and when the court has not allowed such separation, the mere fact of separation of the jury in violation of the order of the court is not a reversible error, unless the defendant shows that his substantial rights have been prejudiced thereby. *Op. cit.* p. 424, § 449; 34 A.L.R. 1158; 79 A.L.R. 830; *People* v. *Martin*, 87 Cal. App. 2d 581, 590, 197 Pac. 2d 379; *People* v. *Walther*, 27 Cal. App. 2d 583, 81 Pac. 2d 452. See especially *People* v. *Bemmerly*, 98 Cal. 299, in which, referring to a situation similar to the one involved here, the Supreme Court of California said that: "The mere fact that the direction of the court was violated does not give to the defendant the right to have the verdict set aside," and that "He must show as fully as if the direction had not been given that one or more of the jurors was influenced in his verdict by some outside influence during or in consequence of such separation." Although we do not approve the conduct of the marshals in the incident above described, as the evidence shows that the jurors were at all times under the immediate custody and in the presence of said marshals, and since the lower court concluded that the jurors were not influenced in any way in connection with the case being tried, it is not possible to conclude that the error assigned was committed. *Cf. People* v. *Goitía*, 41 P.R.R. 929, 931.

■ The fifth error charges the trial court with error "in making statements, gestures, and comments intimating its opinion regarding the testimony of the defense witnesses, leading the jury to interpret the actions of the court as a token of the incredulity of the judge toward the evidence for the defense." In discussing this error the defendant contends that the attitude of the court appears always tainted with passion, prejudice, and partiality against the defendant. While the witnesses Francisco Velázquez, Chief of the Insular Police, and Cristóbal Agosto Ferrán were testifying, the Prosecuting Attorney objected to certain questions made by one of the attorneys for the defense and the court sustained his objections. It also overruled certain objections of the defense to questions made by the Prosecuting Attorney. We have read the transcript of the evidence with the utmost care and we do not think that the imputations of the defense find support in the record.

■ The lower court did not err either in permitting "that during the trial Cristóbal Agosto Ferrán, a defense witness, be arrested and prosecuted for perjury." This witness admitted that his testimony was typewritten by a stenographer and that the signature appearing at the bottom thereof had been affixed by him at headquarters, but not in the presence of Assistant District Attorney Gerena Bras.[1] Since the contents of that affidavit were fundamentally different from and contrary to the testimony of the witness during the trial, he was asked innumerable questions with respect to the conflicts between the one and the other testimony. Once the parties finished examining Agosto Ferrán, the court ordered the marshal to withdraw the jury and in the latter's absence it inquired: "Is the Prosecuting Attorney going to offer rebutting evidence in connection with that affidavit?" and the Prosecuting Attorney

[1] District Attorney Gerena Bras was subsequently called as a witness in rebuttal and stated that said testimony was signed by Agosto Ferrán himself in his presence, in a room of affiant's house.

replied: "We offered the affidavit as identification in order to offer it in evidence later in our turn; it is already identified." On the basis of the foregoing, the defendant claims that it was the court itself, moved by its partiality in the case, which insinuated to the District Attorney that he ought to introduce evidence in rebuttal. We do not agree. The Prosecuting Attorney could not offer in evidence Agosto Ferrán's affidavit while the evidence for the defense was being heard. The least that could be inferred from the request that the affidavit be identified was that said officer would at the proper time offer it in evidence in order to determine whether or not the jury should believe Agosto Ferrán's testimony. *People* v. *Lebrón*, 61 P.R.R. 634, 650; *People* v. *Ríos*, 71 P.R. 908. Moreover, it appears from the transcript of the record that when the Prosecuting Attorney rested his case he said that he would call Víctor Barrios as a witness in rebuttal. The imputation to the effect that the court at its own initiative suggested to the Prosecuting Attorney that he should offer such evidence is, therefore, entirely groundless.

When, as we have indicated above, the Prosecuting Attorney answered that he would offer evidence in rebuttal, the court, while the jury was still absent, ordered the marshal to take charge of the witness. The defense then requested to be informed of the purpose therefor and the court stated that it was not bound to inform him at the time what it intended to do with the witness. Subsequently, and also in the absence of the jury, the court ordered the arrest and detention of Agosto Ferrán for contempt of court by perjury. It was empowered to do so pursuant to the provisions of § 1 of Act No. 41 of 1911 (Sess. Laws, p. 128), (Penal Code, 1937 ed., p. 69). *Cf. People* v. *Aquino*, 33 P.R.R. 247, 253. Nevertheless, it does not appear from the record that the jury ever learned of this incident, for although they were permitted to read newspapers after any matter in connection with the trial had

been cut off, they were not allowed, however, to listen to radio programs nor was any person, including the marshals, allowed to communicate with them in regard to the case. We thus fail to see how this action of the court could prejudice defendant's rights. Therefore, the court acted according to law.

 Finally the appellant claims that the trial court erred "in refusing to give to the jury the special instructions requested by the defense, and especially with regard to self-defense." The special instructions requested by the defendant, not given by the court, were the following: "(a) That the defendant herein has alleged that the homicide was justified because he acted in self-defense. You are instructed to the effect that the defendant is not bound to prove self-defense by means of preponderant evidence or preponderance of the evidence introduced during the trial. If the jury believes that there is doubt as to whether or not the defendant acted in self-defense in the commission of the homicide for which he is being tried, then you are specifically instructed that you must decide said doubt in favor of the defendant and acquit him. (b) Here the Prosecuting Attorney waived the testimony of various witnesses for the prosecution, to wit: Víctor Barrios, Virgilio Reyes, Cristóbal Agosto Ferrán, Fernando Gerena, and Lucy Sánchez widow of Colón. Subdivision 8 of § 102 of the Law of Evidence provides the following: 'That evidence wilfully suppressed would be adverse if produced.' This presumption was actually affirmed in this case inasmuch as the defense called two of said witnesses for the prosecution, Fernando Gerena and Cristóbal Agosto Ferrán, and their testimony was adverse to the evidence for the prosecution. (c) EVIDENCE ON REPUTATION—It must rely only on the evidence established by law and not on rumors, press, radio, or other means of information. It must be taken into account in order that the jury decide who, whether the defendant or the decedent, started the trouble."

The instructions given, as we shall see, included in general terms, insofar as they conformed to law, the special instructions which were denied. In addition to the regular instructions on self-defense, the court stated that "If the gentlemen of the jury believe that no offense has been committed, because it has not been fully established that Cristino Matos' death was due to any act of the defendant, or if you believe that his guilt has in no way been proved, *or if you believe that the defendant acted in legitimate self-defense upon meeting the decedent and that he had reasonable grounds to believe that he was in imminent danger of losing his life, or sustaining serious bodily injuries, if you have any doubt about that, reasonable and well-grounded, then, in any of these cases, the jury must find the defendant not guilty.*"

It can not be gainsaid that the defendant is not bound to establish self-defense beyond a reasonable doubt and that if such doubt exists in the mind of the jury with respect to whether or not the defendant acted in self-defense, it is the duty of the jury to acquit him. *People* v. *González*, 69 P.R.R. 533. The instruction copied above as it was given, clearly conveyed to the jury the meaning that if they had a reasonable doubt with respect to whether or not the defendant acted in self-defense, it was their duty to find him not guilty. The words "if you have any doubt about that, reasonable and well-grounded" also referred to the jury's belief as to whether the defendant acted in legitimate self-defense when he met the decedent.

After presenting the testimony of twelve witnesses, the People rested and declared that it wished to tell the court that although certain witnesses appeared on the reverse side of the information, those witnesses would not be called to testify because their testimony would be cumulative evidence and because the testimony of others might be used in rebuttal. At the instance of the defense the Prosecuting Attorney gave the names of those witnesses and stated, as

we have indicated, that Víctor Barrios would possibly be used in rebuttal. The defense announced forthwith its theory and the hearing of the evidence was begun. Regarding the suppression of evidence the court charged the jury as follows: "The defense has alleged that the prosecuting attorneys suppressed certain evidence which had it been introduced, would have been adverse to the prosecuting attorneys. When the prosecuting attorneys rested their case they said in open court that the testimony of certain witnesses which they named, would be of a cumulative nature; and the defense had the opportunity to exchange viewpoints with those witnesses in order to determine whether or not it would use them. Even though they were used by the defense, the waiver of evidence of a cumulative nature is not the wilful suppression of evidence referred to in the statute. The prosecuting attorney is not bound to submit all the evidence at his disposal to support the charge. Where, in his opinion, a fact is sufficiently shown, he may waive the rest of the evidence at his disposal to establish the same fact. The defense used some of those witnesses; you have heard their testimony. You shall decide whether those testimonies, as given by those witnesses, waived by the Prosecuting Attorney, was evidence contradicting the theory of the Prosecuting Attorney, or evidence cumulative to the theory of the Prosecuting Attorney, which case is governed by the rule that evidence or testimony of witnesses wilfully suppressed must be considered as adverse evidence." The instruction in the manner it was given clearly included the special instruction requested. Hence, there was no reason for the court to give the latter. *People* v. *Dones*, 56 P.R.R. 201, 210.

The instruction given by the court regarding reputation was the following: "The defense has brought evidence to prove the bad reputation of the decedent. The violent, revengeful or sanguinary character of the decedent can not be established to excuse or extenuate homicide for to kill an evil man without provocation is murder, just as if the per-

son killed had been the most peaceful and law-abiding person in the community. When evidence has been presented tending to prove self-defense or there is doubt about the circumstances surrounding the act, the reputation of the decedent as a violent and dangerous man may be established in order to prove that the defendant had a reasonable apprehension of imminent danger, especially under the prevailing circumstances at the time of the homicide." Although it could not be said that the instruction in the manner it was given included as a whole the special instruction requested, we fail to see how could the defendant be prejudiced by the refusal of the court to give it, especially when the court permitted during the trial the presentation of abundant evidence regarding the turbulent and quarrelsome character of the victim. *Cf. People* v. *Valentín*, 63 P.R.R. 756, 761, 762.

None of the errors assigned having been committed the judgment appealed from will be affirmed.