[Crim. No. 2090. First Appellate District, Division One.—September 30, 1940.]

THE PEOPLE, Appellant, v. MARK LEE MEGLADDERY, Jr., Respondent.

752

Earl Warren, Attorney-General, William F. Cleary, Deputy Attorney-General, Ralph E. Hoyt, District Attorney, J. F. Coakley, Chief Assistant District Attorney, and Cecil Mosbacher and .Cameron W. Wolfe, Deputies District Attorney, for Appellant.

Leo R. Friedman for Respondent.

PETERS, P. J.—This is an appeal by the People from an ·order of the Superior Court of Alameda County granting respondent, Mark Lee Megladdery, Jr., a new trial after a jury had found him guilty of two of the offenses charged in the indictment.

In an effort to secure a reversal of the trial court's ruling, the attorney-general and associate counsel have filed briefs herein totaling four hundred and thirty pages, in which many points are argued and re-argued at great length. The main issues presented by this appeal are not complex, and may be simply stated:

1. Does the trial court possess the power, in a criminal case, to grant a new trial upon the ground that the evidence does not show jurisdiction over the offenses charged in the county where the indictment was returned and the trial had?

2. If the trial court has authority to grant a new trial on such a ground, did the trial court, as a matter of law, err in this case in granting a new trial on this ground?

*Was the new trial granted on a ground provided by law?*

Before directly discussing this point a brief reference to the circumstances surrounding the granting of the motion for a new trial should be made.

Megladdery and Edwin W. Geary were jointly charged by indictment with seven offenses. Count one charged a violation of section 653f of the Penal Code in that the accused on March 1, 1938, in Alameda County, solicited one Clarence Bent "to offer and join in the offer of a bribe in the sum of Two Thousand Dollars ($2,000.00) more or less . . . " to the then governor of this state, with the intent to unlawfully influence Governor Merriam's action in the matter of the application for a pardon of one Clarence A. Leddy.

Count two charged Megladdery and Geary with a violation of section 68 of the Penal Code in that on March 1, 1938, in Alameda County, the accused asked and agreed to receive from Clarence Bent a bribe in the sum of $2,000 with the

corrupt intent of influencing Megladdery in his official position as private secretary to the then governor, in connection with the Leddy pardon.

Count three charged Megladdery and Geary with grand theft of $750 from Bent, and count four with the grand theft of $500 from Bent. Count five charged an attempted grand theft of $2,000 from Bent, while count six charged conspiracy to commit grand theft of $2,000 from Bent. Count seven charged a conspiracy to violate section 653f of the Penal Code.

At the conclusion of the prosecution's case counts three and four charging grand theft were dismissed. The other five counts were submitted to the jury. Geary was found not guilty on all five counts. Megladdery was found not guilty as to counts five, six and seven, but found guilty of the offenses charged in counts one and two.

At the conclusion of the prosecution's case respondent moved the court to ''advise the jury to find the defendant not guilty'', or, in the alternative, that each charge in the indictment be dismissed, on the ground that the evidence failed to establish that the Superior Court of Alameda County had jurisdiction of the offenses charged in the indictment. When the jury returned the verdicts finding respondent guilty on counts one and two, he objected to the recording of the verdicts on the ground that the verdicts exonerating him on counts five, six and seven, and of the acquittal of Geary on counts one and two, divested the trial court of jurisdiction. At the time of arraignment for judgment, respondent, by written motion, requested the court to set aside the verdicts as to counts one and two ''upon the ground that the above Court has no jurisdiction'' of the offenses charged. Respondent then moved in arrest of judgment on the ground ''that the above entitled Court has no jurisdiction'' of the offenses charged in counts one and two. Respondent also made a motion for a new trial on the grounds, among others, that as to each count the verdict was contrary to the evidence and that the court had no jurisdiction. The trial court denied all motions except the motion for a new trial. That motion was granted ''on the sole ground of lack of jurisdiction of this Court in the matter of venue of the offenses charged in said first and second counts of the indictment''. It is from this order that the state has taken this appeal.

Whether the trial court may grant a new trial on the ground that the evidence does not show jurisdiction in the county to try the offense, depends upon the proper interpretation of section 1181 of the Penal Code. That section specifies the grounds upon which a new trial may be granted. The section expressly provides that a new trial may be granted ''only'' on the grounds therein set forth. Want of jurisdiction or venue is not specifically named in the section. Subdivision 6 of the section, however, provides for the granting of the motion ''When the verdict is contrary to law or evidence.'' It was apparently under this subdivision that the trial court purported to act in granting the new trial.

In instructing the jury in the present case, the trial judge submitted to the jury the question whether the court had jurisdiction of the offense, along with the question of respondent's guilt. By its verdicts, the jury, of course, found that Alameda County had jurisdiction. It is the theory of respondent that the question of local jurisdiction or venue is one of fact for the jury to determine, and that, on motion for a new trial, the trial judge has the power to determine the sufficiency of the evidence to establish venue in the same manner in which he passes on the sufficiency of the evidence to sustain other elements of the offense. The efficacy of this argument obviously depends upon whether the question of jurisdiction or venue is a question of fact for the jury, or a question of law for the court. If it is a question of fact for the jury, then it would appear that the trial judge may properly grant a new trial under subdivision 6 of section 1181 of the Penal Code, where, in his opinion, the evidence is insufficient to show jurisdiction or venue, but, if the question is one of law for the court, then a motion for a new trial is not the proper method to pass on the issue.

The attorney-general has developed an extended argument to sustain his contention that whether the evidence establishes jurisdiction or venue in the county is one for the determination of the court alone, and in no event should be submitted to the jury. He analyzes various Penal Code sections, advances various arguments of policy, and urges that many improper results will flow from sustaining the contentions of respondent. He concedes, however, that: ''Numerous cases from this and other states of the Union'' (App. Op. Brief, p. 78) could be cited to show that those courts have ''casually'' assumed that evidence of venue must be pre-

sented to the jury for the jury's consideration, and further concedes that, based on this "casual" assumption, "trial courts generally have instructed juries [as did the court in this case] to pass on the question of venue and to acquit the defendant if the evidence failed to establish venue" (App. Op. Brief, p. 79). But, he urges, none of these cases (and as hereafter shown, they are many) has assigned any substantial reason for its conclusion on this point, and none of them has ever attempted to analyze all of the applicable code sections. He then states (App. Op. Brief, p. 80):

"With the utmost confidence in the correctness of our position we submit that the casual assumption to which we have referred is an erroneous one and is supported neither by the statutory law of this state, nor by the requirements of justice. We submit that the correct rule is that although the evidence presented to the jury must contain within it some showing of venue, that *that showing is for the court's consideration and not for the consideration of the jury and that trial courts, in instructing juries to acquit where they are of the opinion that venue has not been established, are placing upon the people of the state a greater burden than the people are required by the statutory law of this state or by the requirements of justice to assume.*" (Italics attorney-general's.)

He urges that the rule of law established by these cases is inherently unsound and should be overruled, and that the doctrine contended for by him should be adopted.

In arguing that the jury may not rightfully pass on the question of venue, and that therefore insufficiency of the evidence on that point cannot be said to render the verdict contrary to the law or evidence within the meaning of subdivision 6 of section 1181 of the Penal Code, the people place great stress on *People* v. *Amer,* 151 Cal. 303 [90 Pac. 698]. That case clearly established, as contended by the attorney-general, that a new trial may be granted only on the grounds set forth in section 1181, *supra,* and that the phrase "contrary to law or evidence" in subdivision 6 is not a catch-all under which any error which may be ground for a reversal may be relied upon to grant a new trial. In that case misconduct of the district attorney was relied upon to grant a new trial before the section expressly made such misconduct a ground for a new trial. It was held that, neither under subdivision 6, *supra,* nor any other provision of the section as it then read, was this a proper basis for the granting of a new

trial. The correctness of respondent's position on this issue does not depend upon refuting these contentions, which are well-established. In fact, respondent concedes they are correct.

 In further support of his position, the attorney-general enumerates other remedies which he finds available to a defendant to secure relief for lack of jurisdiction, and contends that these remedies are exclusive. These remedies are:

1. Demurrer to the indictment or information when want of jurisdiction appears on the face of the pleading (sec. 1004, Pen. Code). This remedy was not available to respondent inasmuch as the defect here charged to exist did not appear on the face of the pleading.

2. Discharge of the jury by the court when it appears that the prosecution has introduced no evidence of venue, and that the court does not have jurisdiction of the offense, the defendant being committed to await a warrant for his arrest from the proper county (secs. 1113–1115, Pen. Code).

3. Motion in arrest of judgment (secs. 1185–1188, Pen. Code).

4. Appeal.

 The existence of the remedy by motion for arrest of judgment, where, as in this case, the want of jurisdiction does not appear on the face of the indictment, is the subject of extended argument by both parties. The attorney-general, contending for the existence of such a remedy, nevertheless contends that even if it does not lie, want of jurisdiction or venue cannot be brought within any of the grounds upon which a motion for a new trial may be granted.

In connection with the discussion of whether a motion in arrest of judgment is available to a defendant under the circumstances here involved, it should be mentioned that, when the motion for arrest of judgment was pending in the trial court, the prosecuting attorney vehemently argued, and apparently convinced the trial court, that a motion in arrest of judgment lies only where the jurisdictional defect appears on the face of the pleading and will not lie where such defect appears only from the evidence. On this appeal, however, the attorney-general, with greater vehemence, argues that the prosecuting attorney was wrong, and that if the facts were as held by the trial court, he had the power to grant, and should have granted, the motion. While it may be true that

the attorney-general is not always bound on appeal by the position taken by the prosecuting attorney at the trial, we have here the rather anomalous situation of the prosecuting attorney taking one position before the trial court and convincing that court of the correctness of that position, and of the attorney-general contending before the appellate court that the prosecuting attorney was in error and that the motion should have been granted. This serves to illustrate the confusion surrounding the discussion of this problem.

The motion in arrest of judgment is provided for by sections 1185–1188 of the Penal Code. Section 1185 provides:

"A motion in arrest of judgment is an application on the part of the defendant that no judgment be rendered on a plea or verdict of guilty, or on a verdict against the defendant, on a plea of a former conviction. It may be founded on any of the defects in the indictment or information mentioned in section ten hundred and four, unless the objection has been waived by a failure to demur, and must be made and determined before the judgment is pronounced. When determined, the order must be immediately entered by the clerk in the minutes."

Section 1186 provides that the court, any time before judgment is pronounced, may arrest judgment on its own motion "for any of the defects mentioned in the last section". Section 1187 provides that the effect of an order arresting judgment "is to place the defendant in the same situation in which he was before the indictment was found or information filed". Section 1188 provides:

"If, from the evidence on the trial, there is reason to believe the defendant guilty, and a new indictment or information can be framed upon which he may be convicted, the court may order him to be recommitted to the officer of the proper county, or admitted to bail anew, to answer the new indictment or information. If the evidence shows him guilty of another offense, he must be committed or held thereon, and in neither case shall the verdict be a bar to another prosecution. But if no evidence appears sufficient to charge him with any offense, he must, if in custody, be discharged; or if admitted to bail, his bail is exonerated; or if money has been deposited instead of bail, it must be refunded to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant; and the

arrest of judgment shall operate as an acquittal of the charge upon which the indictment or information was founded.''

It will be noted that section 1185 of the Penal Code, *supra,* provides that a motion in arrest of judgment ''may be founded on any of the defects in the indictment or information mentioned in section ten hundred and four, unless the objection has been waived by a failure to demur . . . ''.

Section 1004 of the Penal Code, thus incorporated, is the section enumerating the grounds for a demurrer. It provides in part:

''The defendant may demur to the indictment or information, *when it appears upon the face thereof* either:

''1. If an indictment, that the grand jury by which it was found had no legal authority to inquire into the offense charged, by reason of its not being within the legal jurisdiction of the county; or, if an information, that the court has no jurisdiction of the offense charged therein. . . . ''. (Italics ours.)

Largely in reliance on the provisions of section 1188 of the Penal Code, *supra,* and in direct opposition to the provisions of sections 1185 and 1004 of that code, *supra,* the attorney-general advances a long and complicated argument to support his contention that a motion in arrest of judgment for want of jurisdiction may be granted where the want of jurisdiction does not appear on the face of the indictment or information. Respondent argues that, both from the standpoint of interpretation and authority, the trial court's power in this respect, whether on defendant's or its own motion, is limited to cases where the defect appears on the face of the indictment or information. This construction seems in accord with the plain and obvious meaning of the language used in the sections. Section 1188 of the Penal Code, so strongly relied upon by appellant, clearly means (and it seems to us can only mean) that the trial judge has the power to adopt the procedure therein set forth when he has arrested judgment in conformity with either sections 1185 or 1186 of the Penal Code.

In support of its contention that the trial court on such a motion may go beyond the face of the pleading, appellant relies on *People* v. *Hodges,* 27 Cal. 340, and *People* v. *Scott,* 74 Cal. 94 [15 Pac. 384]. The Hodges case was decided under the provisions of the old Criminal Practice Act, the provisions of which were somewhat different from the present provisions of the Penal Code. In the Scott case, the court,

citing sections 1187 and 1188 of the Penal Code, without argument or discussion, states that where a defendant was charged in San Bernardino County with a burglary in that county and the proof shows that the burglary was committed in San Diego County and the fruits thereof taken into San Bernardino County, that the indictment should have set this forth, and then holds that, under such facts, the trial court should have arrested judgment and ordered further proceedings had under sections 1187 and 1188 of the Penal Code. The two cases undoubtedly support the contentions of appellant, but the holding in both cases is not only contrary to the language of the present code sections but is directly and unequivocally contrary to the rule announced in a long series of cases hereafter mentioned. Neither the Scott nor the Hodges case has ever been quoted or cited with approval by any appellate court in this state on the point here involved.

As opposed to these two cases there is a long line of decisions, starting with *People* v. *Indian Peter,* 48 Cal. 250, decided in 1874, holding that a trial court is without power to arrest judgment except for defects that could be challenged by demurrer under section 1004 of the Penal Code—i. e., for defects appearing on the face of the pleading. In that case the defendant appealed, contending that his motions for discharge and in arrest of judgment should have been granted for a defect not appearing on the face of the indictment. The court held (48 Cal. at p. 252) :

"It is settled here, that the only grounds upon which a motion in arrest of judgment can be supported are those which are enumerated in the statute; that is, upon certain defects appearing in the indictment upon which the verdict is found. (Pen. Code, sec. 1004; id., sec. 1185.) The motion in arrest not being based upon any one of the enumerated grounds, was properly denied."

In *People* v. *Johnson,* 71 Cal. 384, at page 392 [12 Pac. 261], the court, in discussing whether proceedings before the magistrate could affect the validity of the information, stated:

"Moreover, a motion in arrest of judgment must be founded upon defects in the indictment or information appearing on the face thereof. (Pen. Code, secs. 1185, 1004.)"

In *People* v. *Tomsky,* 20 Cal. App. 672 [130 Pac. 184], the jury convicted the defendant. At the time fixed for pronouncing sentence the court, of its own motion, made an order

setting aside the verdict on the ground that the defendant had entered no plea to the information. The people appealed. The attorney-general argued on that appeal that the order was one in arrest of judgment and was improper because granted on a ground not appearing on the face of the information. At page 676 the court stated:

"But, as stated, the attorney-general vigorously contends that the order is more in the nature of one in arrest of judgment than any other from which an appeal by the people is authorized. If that view of the order were justified, then unquestionably it would have to be reversed for the reason that the ground upon which it was granted is not included among those upon which an order in arrest of judgment may be made. And, for the same reason, we cannot see how it can be viewed as an order in arrest of judgment or as intended to have the effect of such an order.

"Section 1185 of the Penal Code provides that a motion in arrest of judgment 'may be founded on any of the defects in the indictment or information mentioned in section ten hundred and four, unless the objection has been waived by a failure to demur, and must be made and determined before the judgment is pronounced.' Section 1004 enumerates the grounds upon which the defendant may demur to the indictment or information, when the defects constituting such grounds appear upon the face of the pleading. Section 1187 of said code provides that the 'effect of an order arresting the judgment is to place the defendant in the same situation in which he was before the indictment was found or information filed'.

"Thus it will be seen that a motion in arrest of judgment is directed against the sufficiency of the indictment or the information to state a public offense or for any other defects appearing upon the face of such pleading which would subject it, under the law, to the claims of a demurrer, and is entertainable only where the defendant has demurred to the pleading by which he is charged."

The rule announced in these cases has been also announced in many other cases. (*People* v. *O'Leary,* 77 Cal. 30, 33 [18 Pac. 856]; *People* v. *Gardner,* 98 Cal. 127, 128 [32 Pac. 880]; *People* v. *Chaves,* 122 Cal. 134, 143 [54 Pac. 596]; *People* v. *Cole,* 127 Cal. 545, 549 [59 Pac. 984]; *People* v. *Mead,* 145 Cal. 500, 503 [78 Pac. 1047]; *People* v. *Welton,* 190 Cal. 236,

238 [211 Pac. 802]; *People* v. *Cordosco,* 77 Cal. App. 780, 783 [246 Pac. 461]; 8 Cal. Jur., p. 445, sec. 466.) It is well-settled in other states that a motion in arrest of judgment can be based only on matters of record, and that defects which appear only by the aid of evidence cannot be the subject of such a motion. It is also well-settled that the objection that proper venue has not been proved must be based on the evidence and therefore cannot be urged in arrest of judgment (16 Cor. Jur., p. 1255, secs. 2782, 2784).

We find nothing in section 1012 of the Penal Code which compels or suggests a contrary construction.

Under these circumstances, upon an analysis of the various pertinent code sections, and giving due weight to the fact that many cases, with and without giving a reason therefor, have so held, we must agree with respondent that the motion in arrest of judgment was not available to Megladdery and was properly denied by the trial court. This holding, however, is not decisive of the problem here presented, which is whether the question of local jurisdiction is a question of fact for the jury or one of law for the court. We turn now to a direct discussion of that problem.

While it is true that a defendant does not have a constitutional right to have his case determined by the jury of any particular county (*People* v. *Richardson,* 138 Cal. App. 404 [32 Pac. (2d) 433]) it is also true that our statutory law has determined, with certain exceptions, that an accused person is answerable only in the jurisdiction where the crime, or some part or effect thereof, was committed or occurred. (*People* v. *Wilson,* 86 Cal. App. 160 [260 Pac. 330]; secs. 777, 781, Pen. Code.) It is an elementary principle of our jurisprudence that the question of jurisdiction over the subject matter can never be waived nor conferred by consent. It seems quite clear to us, that, from the standpoint of logic, the question of jurisdiction, whether it be local or general jurisdiction, is fundamentally and necessarily a question of fact, and that in a criminal case, the burden of proving that fact rests on the prosecution. If this is so, it must follow that the determination of this fact rests with the jury. Where this fact is not proved, the verdict is contrary to the evidence within subdivision 6 of section 1181 of the Penal Code and a new trial may be granted.

The attorney-general concedes that there is a long line of California cases holding in accord with these views. This con-

cession is in accord with the facts. In *People* v. *Fisher*, 51 Cal. 319, the Supreme Court reversed a conviction and remanded the cause for a new trial on the ground that local jurisdiction had not been proved. The court held that the question of insufficiency of the evidence to establish venue could be raised under the new trial specification that the verdict was contrary to the evidence. The court stated, at page 320:

"The point is made, that it was not proven that the alleged offense was committed in the county of San Joaquin. Upon a careful examination of the bill of exceptions, we find no evidence tending to prove the venue. . . . *One ground of the motion for a new trial is that the verdict is contrary to the evidence;* but the defendant is not required, as in civil cases, to specify the respects in which the evidence is insufficient; and consequently, on the hearing of the motion, *he may rely on the point that the evidence is insufficient to prove any one of the facts in issue.*" (Italics ours.)

In *People* v. *More*, 68 Cal. 500 [9 Pac. 461], the trial court granted defendant's motion to set aside an information charging him with manslaughter on the ground that it did not appear from the evidence taken before the committing magistrate that the crime or any part thereof was committed in Santa Barbara County. The Supreme Court reversed the trial court, and, in pointing out defendant's proper remedy, stated (p. 504):

"If it had appeared on the face of the information (which it did not) that the offense charged was committed out of the jurisdiction of the court, the proper mode to take advantage of such objection would have been by demurrer. (Pen. Code, sec. 1004.) But in a case like the one we are now considering, where the information is good on its face, defendant should have availed himself of the objection to the jurisdiction under the plea of not guilty; and in that event *it would have been a question for the jury to determine.* (Pen. Code, sec. 1012.)" (Italics ours.)

The point is also discussed in *People* v. *Smith*, 26 Cal. App. (2d) 189, 190 [79 Pac. (2d) 155], where the court, in discussing appellant's contention that the prosecution had failed to prove venue, stated:

"If, as contended for by the appellant, the prosecution had failed to introduce testimony from which the jury could find

that the offense was committed in the county of Sonoma, as alleged in the indictment, the defendant could have rested without introducing any testimony whatever upon that subject. That he introduced testimony tending to controvert the testimony of the prosecution, was a purely voluntary act on his part, and of course *created only a conflict in the testimony, which presented, first, a question for the jury,* and if there is sufficient testimony in the record upon which the jury might reach a conclusion that the offense was committed in the county of Sonoma, the verdict cannot be disturbed on the question of venue." (Italics ours.)

In *People* v. *Parks,* 44 Cal. 105, the court reversed a judgment of conviction and remanded the cause for a new trial. The prosecution failed to prove local jurisdiction. It was held that it was essential for the prosecution to prove this fact and failure to do so warranted a reversal. The same ruling was made in *People* v. *Roach,* 48 Cal. 382. There are many other cases of the Supreme and Appellate Courts holding that the question of venue is one of fact for the jury. (*People* v. *Twedt,* 1 Cal. (2d) 392 [35 Pac. (2d) 324]; *People* v. *Bringhurst,* 192 Cal. 748 [221 Pac. 897]; *People* v. *Botkin,* 132 Cal. 231 [64 Pac. 286]; *People* v. *McGregar,* 88 Cal. 140 [26 Pac. 97]; *People* v. *Larue,* 28 Cal. App. (2d) 748 [83 Pac. (2d) 725]; *People* v. *Carter,* 10 Cal. App. (2d) 387 [52 Pac. (2d) 294]; *People* v. *Marron,* 140 Cal. App. 432 [35 Pac. (2d) 610]; *People* v. *Thorn,* 138 Cal. App. 714 [33 Pac. (2d) 5]; *People* v. *Roland,* 134 Cal. App. 675 [26 Pac. (2d) 517]; *People* v. *Bradford,* 84 Cal. App. 707 [258 Pac. 660]; *In re Application of O'Connor,* 80 Cal. App. 647 [252 Pac. 730]; *People* v. *Coker,* 78 Cal. App. 151 [248 Pac. 542]; *People* v. *Meseros,* 16 Cal. App. 277 [116 Pac. 679].)

From these cases it would appear that it is a settled principle of criminal law in this state (and the same rule exists elsewhere—16 Cor. Jur., p. 530, sec. 997) that venue is a question of fact for the jury, and that the burden rests on the prosecution to prove this fact not beyond a reasonable doubt but by a preponderance of the evidence (*People* v. *Carter,* 10 Cal. App. (2d) 387 [52 Pac. (2d) 294]). Since this is so, it follows that failure to prove local jurisdiction falls directly within the meaning of subdivision 6 of section 1181 of the Penal Code.

The attorney-general cites no case to the contrary. He analyzes many Penal Code sections and comes to the conclusion that as a new proposition the question of venue should not be submitted to the jury, but should be for the determination of the court alone. He points out that a new trial, by statutory definition, is ''a re-examination of the issue in the same court, before another jury'' (sec. 1179, Pen. Code) and urges that a new trial is inappropriate where the evidence shows the particular court has no jurisdiction. This is clearly an unsound argument. The attorney-general concedes that, where there is a failure to show where the crime was committed at all, there is reason to grant a new trial to permit the prosecution to supply this deficiency (App. Op. Brief, p. 105), but contends that, where the evidence shows the crime to have been committed in a county other than the place of trial, a new trial in the county of the original trial is not an appropriate remedy. Even if this were so, a new trial is appropriate in several other situations. For example, where, as in the instant case, there are several acts connected with the alleged offense, venue or jurisdiction may depend upon facts as to which the evidence is conflicting, or upon evidence from which conflicting inferences may be drawn or the evidence produced on a new trial may vary from that on the first trial. In these various situations, there is as much reason for a new trial on the issue of venue as there is as to other issues where a new trial is granted because the verdict is, in the opinion of the trial judge, contrary to the evidence.

The attorney-general further contends that the dictates of justice require that it be held that the jury has no right to pass on the question of local jurisdiction. It is contended that, if the trial court should pass on the question of venue in any of the several modes constituting what he contends are the exclusive methods, already enumerated in this opinion, or, should the appellate court pass on the question on appeal from the judgment of conviction, the result would be to return the defendant and the people to the status existing before the indictment was returned. In other words, the people would still have the right to prosecute the defendant in another county. (Secs. 1115, 1188, Pen. Code.) But if the question is submitted to the jury, and it *acquits* the defendant because venue is not established, the acquittal will forever

bar a subsequent prosecution. The attorney-general finds in other instances where the jury is to pass upon a question other than the guilt of a defendant, such as former conviction, or jeopardy, or variance between the indictment and proof, the law provides for a special verdict on that ground, rather than a general verdict. (See, secs. 1017, 1021, 1151, Pen. Code.)

The answer to these arguments, and the other similar arguments advanced by the attorney-general is that, admittedly, from an early date in this and other states, the question of local jurisdiction or venue has been treated by the trial courts and by the appellate courts as a jury question. Apparently, no grave miscarriage of justice has occurred under this rule. In view of the long line of decisions already referred to, it is our belief that if the rule is to be changed it should be done by the legislature and not by this court.

For the reasons already set forth we hold that the question of local jurisdiction is a question of fact for the jury's consideration, and that the trial judge possesses the power to grant a new trial for insufficiency of the evidence on this issue under subdivision 6 of section 1181 of the Penal Code.

■ *Did the trial court err, as a matter of law, in granting the motion for new trials?*

The attorney-general divides his argument on this point into three main subdivisions:

1. By what degree of proof and *quantum* of evidence must venue be established in order to warrant the jury in deciding that venue has been established?

On this point the parties are agreed. Respondent concedes that under the decision in *People* v. *Carter*, 10 Cal. App. (2d) 387 [52 Pac. (2d) 294], and cases therein cited, venue in the county need only be established by a preponderance of the evidence, and that the rule requiring proof beyond a reasonable doubt applies only to the issue of guilt. (See, also, *People* v. *Montgomery*, 32 Cal. App. (2d) 43 [89 Pac. (2d) 184]; *People* v. *De Soto*, 33 Cal. App. (2d) 478 [92 Pac. (2d) 466]; *People* v. *West*, 34 Cal. App. (2d) 55 [93 Pac. (2d) 153].)

■ 2. After the jury has decided that venue has been established, how weak must the evidence concerning venue be to warrant the trial judge in granting a new trial on the ground that the verdict is contrary to the law or evidence?

This point is integrally connected with the third point urged by the attorney-general.

3. Was the proof of venue in this case so weak as to warrant the trial court in granting a new trial on that ground?

For the purpose of discussing these points, we will assume that there was sufficient evidence in the record to support a finding of venue in Alameda County. That this assumption is in accord with the facts will be demonstrated later in this opinion.

On these issues the attorney-general argues that there exists a great limitation on the power of the trial court to grant a motion for a new trial on the ground that the evidence in reference to venue is conflicting. He argues that if the prosecution produces *any evidence* from which the existence of venue can be inferred by the jury, the trial judge is powerless to weigh that evidence on a motion for a new trial; that the mere production of such evidence confers jurisdiction on the court; that the trial judge, even if convinced such testimony is perjured, is bound by it; that wherever "some evidence, however slight, from which it can be reasonably inferred that venue exists" (App. Op. Brief, p. 126) is introduced by the prosecution, article VI, section 4½, of the Constitution steps in to prevent the trial court from granting a new trial on that ground. This last proposition was strongly urged by the attorney-general at the oral argument, it being his contention that when any evidence at all is introduced on this issue the mere fact that the trial court, in exercising his function in passing on a motion for a new trial, does not believe that evidence, or believes the weight of the evidence refutes the evidence relied upon by the people, does not confer upon him the power to weigh that evidence—according to the attorney-general failure of proof on this issue is a mere error in a "matter of procedure" within the meaning of that curative provision of the Constitution. Based on these fundamentally unsound premises, the attorney-general then argues the case as if the *defendant* were appealing from an order *denying* his motion for a new trial. He demonstrates that there is evidence in the record from which the jury could find that essential elements of both offenses were committed, or the effects consummated, in Alameda County, and argues that, therefore, the jury verdict must be upheld. This is not the law, and no case and no sound argument is offered

to support it. This is an appeal by the *state* from an order *granting* the defendant a new trial. In such a situation every reasonable intendment must be indulged in favor of the trial court. This court, as an appellate court, cannot substitute its judgment for that of the trial judge. If the evidence, even though conflicting, is susceptible of a construction that will uphold the action of the trial judge, then this court cannot interfere with the order granting a new trial. There is no basis for contending that, in passing on the factual question of local jurisdiction, the trial judge does not possess exactly the same powers as he possesses in passing on the other factual issues in the case. ▮ It is elementary that, in determining the sufficiency of the evidence on a motion for a new trial, the trial judge is not bound by the rule as to conflicts in the evidence. He may disregard such evidence as he believes to be untrue and may draw inferences therefrom at variance from those drawn by the jury. The rule that the court will not disturb findings based on conflicting evidence applies only to the appellate court. It has no application to a trial judge in passing on a motion for a new trial (*People* v. *Harband*, 99 Cal. App. 32 [277 Pac. 1102]).

Somewhat the same argument in reference to the applicability of article VI, section 4½, of the Constitution was made by the state in *People* v. *Canfield*, 173 Cal. 309 [159 Pac. 1046], which was also an appeal by the people from an order granting a new trial, and where it was contended that article VI, section 4½, constituted a limitation on the trial court's powers. The court stated (p. 311):

"It is contended on behalf of the prosecution that the defendant's statement that he had been engaged in the commission of another crime with Rabild was not a confession of guilt of this offense for which he was on trial; that even if it be regarded as such confession it was given without coercion; that the proof of alleged alibi was so vague as to be of no value; and that the guilt of Canfield was so conclusively established as to render the court's action in granting a new trial an abuse of discretion. It is asserted, therefore, that under section 4½ of article VI of the constitution it is our duty to set aside the order granting a new trial. . . .

"It was for the judge of the trial court to say what had been the effect of the evidence upon the jury, and whether or not the defendant in view of all of the facts had been given

a fair trial. If the motion for a new trial had been denied, the prosecution might then well have invoked in favor of the conviction the section of the constitution which provides that no new trial shall be granted in any criminal case on the ground that improper evidence has been admitted, 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'. (Const., art. VI, sec. 4½.) But this section of the Constitution was not designed to take from the trial court and transfer to the appellate courts the high discretion vested in that tribunal. The judge who presided at the trial of the cause, who heard the testimony, who observed the jurors and had an opportunity also of testing the truth of the defendant's statements by noticing his demeanor, was in a peculiarly favorable position for determining justly the question whether or not the defendant had been accorded a fair trial. We cannot follow the mental processes of the judge. . . . We can hardly manufacture in fancy a hypothetical situation in which a reviewing court would be justified in questioning the discretion of a trial court who should grant a new trial in a case involving a criminal charge. Surely there is no basis in the case before us for the substitution of the discretion of this court for that of the superior court. We must assume that the learned judge of the trial court acted with a full appreciation of his duties and obligations, with the cited section of the constitution in mind, and that the conclusion which he reached was not governed by any idle nor any mere technical reasons.''

Even where there is no conflict in the evidence, and all the evidence on the issue was produced by the prosecution, nevertheless, the trial court, in passing on a motion for a new trial, is permitted to disregard any or all of such evidence. The proper rules are set forth and discussed in *People* v. *Cesena*, 18 Cal. App. (2d) 727, 729 [64 Pac. (2d) 732]. In that case, which was an appeal by the people from an order granting a new trial, there was no conflict at all in the evidence. The attorney-general there argued that under such circumstances there was an abuse of discretion in granting the motion. The court stated:

''Nevertheless, it is settled that, in any trial which is had with the assistance of a jury, a defendant is entitled

to two decisions on the evidence, one by the jury and another by the trial judge in passing upon a motion for a new trial. (*Smith* v. *Royer,* 181 Cal. 165 [183 Pac. 660].) In giving consideration to the important matter of the sufficiency of the evidence to support the jury's verdict, the trial court, in ruling on a motion for a new trial, is not bound by conflicts in the evidence (*Moyer* v. *Dresch,* 2 Cal. App. (2d) 655 [38 Pac. (2d) 849]), and the duty is imposed upon it then to consider such additional and not unimportant features as the credibility of witnesses, their manner and appearance in testifying, and the proper weight to be accorded to the evidence. While the solemn verdict of a jury should not lightly be vacated the responsibility nevertheless rests with the court again to review the cause and only after such review to decide the application for a new trial. (*Olinger* v. *Pacific Greyhound Lines,* 7 Cal. App. (2d) 484 [46 Pac. (2d) 774].) If such review produces a conviction of evidentiary insufficiency to support the verdict it is the plain duty of the trial court to set it aside and order a new trial. (*People* v. *Bacos,* 14 Cal. App. (2d) 338, 349 [58 Pac. (2d) 221].) The fact that the evidence submitted during the trial was wholly that of the prosecution and stands uncontroverted by evidence produced on behalf of the respondent can make no difference in the exercise of that supervisory power which the trial court possesses over the verdict of the jury. In such a case the same duty rests upon the judge of satisfying himself that guilt has been established that is imposed upon him in cases where the evidence is conflicting. Even though all the evidence which was produced points in one direction, the court is not required to believe it. The trial judge has the same opportunity afforded to the jury of observing the manner of witnesses, the character of the testimony they give, and of discovering their motives and their interest and of judging their credibility. He should himself be satisfied that the evidence as a whole was sufficient to sustain the verdict. If he is unable to arrive at this conclusion the granting of a new trial is not merely a proper exercise of legal discretion. It is a duty incumbent upon him by virtue of the office which he holds." (See, also, *People* v. *Knutte,* 111 Cal. 453 [44 Pac. 166].)

These cases, and the sound reasoning upon which they are based, completely refute the broad contentions of appellant.

In his reply brief the attorney-general contends that, if it be conceded that a trial judge possesses broad powers in passing on a motion for a new trial on the ground of insufficiency of the evidence, including insufficiency to show venue, in this case the motion was not granted on that ground. This contention is predicated on the following facts: Respondent's motion for a new trial on each count set forth seven grounds for the granting of the motion. In specification No. 4 it was alleged, "That the verdict is contrary to law", and in specification No. 5, "That the verdict is contrary to the evidence." Specification No. 6 was, "That the court has no jurisdiction of the offense."

The minute order of the trial court granting defendant's motion for a new trial reads in part as follows:

"Said motions having been heretofore argued and submitted and the Court being fully advised in the law and the premises, now orders that defendant's motion for a new trial as to the first, and as to the second counts of the indictment be and the same is hereby granted on the sole ground of lack of jurisdiction of this Court in the matter of venue of the offenses charged in said first and second counts of the indictment."

It is urged that this minute order demonstrates that the trial judge did not weigh the evidence, but determined as a matter of law, that he must grant the new trial. It is argued that it can be inferred therefrom that the trial judge believed that there was no evidence of venue at all, and that venue was lacking as a matter of law. It is further argued that, by granting the motion on the "sole ground of lack of jurisdiction", the trial judge denied the motion on the grounds that the verdicts were contrary to the law or evidence. Assuming that this is a permissible inference from the wording of the minute order, it is not the only inference that can be drawn therefrom. The mere fact that the trial court did not, in its order, use the phrase "insufficiency of the evidence to establish venue", does not necessarily mean that the court did not mean exactly that when it used the expression that the new trial was granted "on the sole ground of lack of jurisdiction of this Court in the matter of venue". That expression could mean that he had weighed the evidence and found the evidence as to jurisdiction insufficient. We are well aware that the rule that on appeal from an order granting a

new trial the order will be affirmed if any ground exists therefor regardless of the reasons assigned by the trial court, has an important exception to the effect that if the trial court by direct and unequivocal language *excludes* insufficiency of the evidence as a ground for granting the motion, the appellate court will not affirm the order on that ground. (*People* v. *Flood,* 102 Cal. 330 [36 Pac. 663]; *Kauffman* v. *Maier,* 94 Cal. 269 [29 Pac. 481, 18 L. R. A. 124]; *People* v. *Palmer,* 92 Cal. App. 323 [268 Pac. 417].) But that exception has no application to this case. By granting the motion on "the sole ground of lack of jurisdiction of this Court in the matter of venue" the trial court did not by direct and unequivocal language exclude specification No. 5—that is, that the verdict was contrary to the evidence. It is a possible and reasonable construction of the minute order that what the trial judge said and meant was that he was granting the motion on the sole ground that in his opinion the evidence was insufficient on the issue of venue. Since this is not only a possible but is also a reasonable construction of the order, we are not permitted to indulge in any other interpretation. Under elementary principles we must give the order, if possible, that construction that will uphold the trial court rather than indulging in another interpretation, even though equally reasonable, which would result in overruling the trial judge's discretionary powers.

■ In an attempt to support his interpretation of the order the attorney-general refers to the statements made by the trial judge at the time the motion for a new trial was granted, and contends that this oral opinion discloses that the order was granted on the theory urged by him. The general rule is that the opinion of the trial court is no part of the record on appeal and normally will not be considered by the appellate court. The general rule is always applied where the opinion of the trial court is used to impeach the findings or judgment. But that rule has its exceptions. The problem was recently considered by the Supreme Court in *Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal. (2d) 740 [47 Pac. (2d) 273]. In that case it was held that, where the findings did not disclose the process by which the amount of the judgment was reached, and the opinion of the trial court set forth that process and was consistent with the findings, the opinion could be considered by the appellate court. After

citing cases applying the general rule the court stated the the exception (3 Cal. (2d) at p. 750) as follows:

"There is another line of decisions in no way inconsistent with the cases just cited which hold that the opinion of the trial judge may be considered for the *purpose of discovering the process by which the trial judge arrived at his conclusions,* or when the opinion furnishes the basis of the court's action in its decision of the case. (*Estate of Felton,* 176 Cal. 663, 667 [169 Pac. 392], and *Coakley* v. *Ajuria,* 209 Cal. 745, 749 [290 Pac. 33].)" (Italics ours.) Under the rule announced in this case, if the oral opinion disclosed, without ambiguity, the mental processes of the trial judge in reaching his conclusion, it could be properly used by the appellate court in interpreting the order subsequently made. The difficulty is that the oral opinion, just like the minute order, is ambiguous—it does not disclose "the process by which the trial judge arrived at his conclusions". The trial judge's statement appears at pages 1332 to 1335 of the reporter's transcript. It would serve no useful purpose to quote it in full. After expressing his reluctance in having to set aside the jury's verdicts, he stated that in his opinion, "I feel that the crime, if committed, the two crimes charged in counts one and two were, if at all, committed in the County of San Francisco". Did he mean that, after weighing the evidence, he was of that opinion, or did he mean, as a matter of law, there was no evidence that the crimes or effects thereof had been committed or consummated in Alameda County? One interpretation is as reasonable as the other. A little later he stated: "I am frank to say I take it as a judge, I can see nothing to do but to grant this motion for a new trial *in view of the evidence,* that is (it) shows lack of jurisdiction." (Italics ours.) Again, does this statement not disclose that the trial judge came to his conclusion after weighing and considering the evidence? From other parts of the statement the appellant concludes that the trial judge mistakenly believed that there was no evidence at all that the crimes had been wholly or in part committed in Alameda County. The very fact that the trial judge granted the motion for a new trial, which indicated his opinion that the causes should be tried again, and did not grant some of the other motions made by counsel for respondent during the trial, is some indication that the trial court believed there was a conflict in the evidence on the question of jurisdiction.

From what has been said, it appearing that both the oral statement of the trial court and the minute order are ambiguous, we are compelled to indulge in that interpretation that will result in upholding the action of the trial judge as long as that interpretation is reasonable. We, therefore, conclude this portion of the opinion with the .statement that the trial judge acted well within his powers in granting the motion.

 *Is there evidence in the record, which, if believed, would support a finding of jurisdiction in Alameda County?*

In view of the fact that a new trial is contemplated, other contentions of the parties must be considered in order that these controverted matters may be determined for the benefit of the trial court on such new trial. So far in this opinion we have assumed that as to those crimes charged in counts one and two of the indictment so far as venue is concerned, the evidence was conflicting. That assumption is in accord with our views after reading the record. Stated another way, had the motion for a new trial been denied, we are of the opinion that there is sufficient evidence in the record to support the implied finding of the jury that Alameda County had jurisdiction of the two offenses. Respondent contends that under section 781 of the Penal Code a particular county cannot have jurisdiction over an offense unless some act which is a necessary element of the offense is committed in that county, or unless some effect of such an act, which effect is an essential or necessary element of such offense, occurs within the county. Respondent also contends that once the commission of an offense has progressed to the point where prosecution therefor is warranted, no act thereafter committed, and no effect of such act thereafter occurring, is or can be an act or effect which is an essential or necessary element of that offense. Neither contention is sound. The first is refuted by the language of the section. Section 781 ·of the Penal Code provides:

"When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

The interpretation contended for by respondent would completely disregard the phrase "or the acts or effects

thereof constituting or requisite to the consummation of the offense'' contained in the section. Obviously, the phrase, ''or requisite to the consummation of the offense'', means requisite to the completion of the offense—to the achievement of the unlawful purpose—to the ends of the unlawful enterprise. By the use of the word ''consummation'' the legislature drew a distinction between an act or an effect thereof which is essential to the commission of an offense, and an act or effect thereof which, although unessential to the commission of the offense, is requisite to the completion of the offense—that is, to the achievement of the unlawful purpose of the person committing the offense.

By his second contention respondent would limit the essential or necessary elements of an offense or its effects to those acts or effects of acts occurring prior to the instant that the offense becomes sufficiently complete to warrant prosecution. Under the interpretation we have already given to the section, this construction cannot be sustained. That the interpretation contended for by the appellant is the correct one is demonstrated by a reference to the cases. In *People* v. *Graves,* 137 Cal. App. 1 [29 Pac. (2d) 807, 30 Pac. (2d) 508], defendant was charged, in Los Angeles County, with the crime of *receiving* and *agreeing to receive* a bribe to vote as a supervisor of that county in favor of a certain proposal then pending before the board. The evidence showed that the bribe money was paid to the defendant in San Francisco. Apparently, there was no evidence where the agreement to accept the bribe was made. The appellate court held that since the evidence showed the money was given for the vote of appellant, and since that vote was given in Los Angeles, that was sufficient to give Los Angeles jurisdiction. In other words, the dishonest vote was not an essential part of the crimes charged, and the crime was complete before the vote was given, but, nevertheless, it was held, and properly so, that Los Angeles had jurisdiction—the vote was a legal effect of the corrupt agreement, and that gave Los Angeles jurisdiction. This case completely refutes the arguments of respondent on this point.

*People* v. *Boggess,* 194 Cal. 212 [228 Pac. 448], is another case in point. In that case Boggess caused to be filed in the San Francisco office of the Commissioner of Corporations an application for a permit to sell shares of stock. The filing

fee was paid at that time. The application was then forwarded by the deputy commissioner in San Francisco to the Sacramento office of the commissioner to be there investigated by the deputy commissioner assigned the duty by the commissioner to investigate such applications. Boggess was prosecuted in Sacramento County on the charge of filing an application containing false claims and recitations. After conviction on appeal, he contended that, since he filed the application in San Francisco, Sacramento had no jurisdiction. Although the case was reversed on other grounds, it was held that Sacramento County had jurisdiction under section 781 of the Penal Code because the crime was ultimately consummated in Sacramento County. No essential element of the crime was committed in Sacramento—he could have been prosecuted in San Francisco, the crime having been completed there—but one of the effects of the San Francisco acts was the transmittal of the application to Sacramento. This case is also contrary to the contentions of respondent.

Another case equally in point is *People* v. *Anderson,* 3 Cal. App. (2d) 521 [40 Pac. (2d) 270]. The appeal in that case was from a judgment of the Superior Court of Sacramento County convicting defendant of robbery. The only ground of appeal was that the robbery occurred in Yolo County. The facts were that the victim, a taxicab driver, received a telephone call in Sacramento County directing him to go to the outskirts of the city of Sacramento and pick up some passengers. These passengers were defendant and his wife who directed the driver to take them to a resort in Yolo County. After entering the last-named county, the robbery occurred. Defendant then took possession of the cab and drove back to Sacramento. The court held that the procuring of the cab in Sacramento and the return to that county gave it jurisdiction. It will be noted that the procuring of the cab was merely an act of preparation and no essential element of the offense of robbery. Although the return of the defendant to Sacramento falls within section 786 of the Penal Code, the court held that factor, constituting an effect of the crime, also fell within section 781 of the Penal Code.

*People* v. *Grubb,* 24 Cal. App. 604 [141 Pac. 1051], is another case equally in point. There the defendant was charged with and convicted in San Francisco of an attempt to commit the crime of pandering. The defendant had ap-

proached the prosecutrix in Los Angeles, who was intending to come to San Francisco, and suggested that she stay in San Francisco with a woman friend of his, with whom the prosecutrix could engage in the lodging house business. When the prosecutrix arrived in San Francisco she found she was expected to engage in prostitution. She refused. The defendant was found guilty of an attempt to commit pandering. The appellate court held that the crime comprised a series of acts some of which occurred in San Francisco, and, under section 781, San Francisco had jurisdiction. Clearly, the crime was complete in Los Angeles—but it was a continuing transaction. Other cases which hold substantially in accord with these cases are: *People* v. *Twedt,* 1 Cal. (2d) 392 [35 Pac. (2d) 324]; *People* v. *Sing,* 42 Cal. App. 385 [183 Pac. 865]; *People* v. *Keller,* 79 Cal. App. 612 [250 Pac. 585]; *People* v. *Chase,* 117 Cal. App. (Supp.) 775 [1 Pac. (2d) 60]; *People* v. *Steffner,* 67 Cal. App. 1 [227 Pac. 690]; *People* v. *Thorn,* 138 Cal. App. 714 [33 Pac. (2d) 5]. *People* v. *Ballas,* 55 Cal. App. 748 [204 Pac. 401], cited by respondent, is out of line with the many cases cited, *supra,* and must be disregarded. There are cases from other jurisdictions that uphold respondent's contentions, but these cases are out of line with the California cases, and are out of line with many well-reasoned cases from other jurisdictions. Of the many cases cited by appellant, *People* v. *Vario,* 165 Misc. 842 [2 N. Y. Supp. (2d) 611], *Burton* v. *United States,* 202 U. S. 344 [26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362], *In re Palliser,* 136 U. S. 257 [10 Sup. Ct. 1034, 34 L. Ed. 514], and *United States* v. *Thayer,* 209 U. S. 39 [28 Sup. Ct. 426, 52 L. Ed. 673], are closely in point.

Under the rule announced by these cases we must hold that if any portion of the crimes charged was committed in Alameda County, or if any act requisite to the completion of the offenses or requisite to the achievement or end of the unlawful purpose occurred in Alameda County, that county has jurisdiction.

Applying this test to the facts of this case, there can be no doubt that evidence was introduced by the prosecution which, if believed by the jury, as it apparently was, and by the trial judge, which it apparently was not, would support a finding that Alameda County had jurisdiction. It would serve no useful purpose to recite all this evidence

in this opinion. It is sufficient, for the purposes of this opinion, to state that Megladdery, so far as the two counts now involved are concerned, was charged with (1) a violation of section 653f, Penal Code, in that he did solicit one Clarence Bent to offer and join in the offer of a bribe with the corrupt intent to influence the then governor in the matter of a pardon for one Clarence Leddy, and (2) a violation of section 68 of the Penal Code by asking and agreeing to receive from Clarence Bent a bribe, with the corrupt intent of influencing Megladdery in his position as private secretary to the then governor in the matter of the Leddy pardon. Note that count one charges the *solicitation* of a bribe, and the person supposed to be bribed was the governor, while count two charges the *asking* and *agreeing to receive* a bribe (not the receiving of it) and the person involved was Megladdery. So far as venue in Alameda County is concerned, whether such venue exists depends upon the participation of Geary, jointly indicted and tried with Megladdery, but found not guilty of all charges. There can be no doubt that the evidence introduced by the prosecution, if believed, tended to show that the essential elements of both crimes charged were committed by Megladdery in San Francisco. The original solicitation and agreement occurred in Bent's liquor tavern in San Francisco some time in February, 1938. Megladdery was a patron of that tavern. Bent and Megladdery casually discussed the fact that Bent had a friend, Leddy, who was in San Quentin convicted of the crime of murder. Later the same evening Megladdery asked a waitress in the tavern, Mrs. Marr, if she thought Bent would be willing to give $1,000 for Governor Merriam's campaign if he, Megladdery, could get a pardon for Leddy. She said she would ask Bent, which she did. Bent told her that if Megladdery could get the pardon it would be worth $2,000 to him. Mrs. Marr so reported to Megladdery. Bent and Megladdery then discussed the matter alone. Bent testified that he told Megladdery that if Megladdery could obtain a pardon for Leddy he would put $2,000 into Merriam's campaign. Megladdery replied: "All right, I will see you later." Two weeks later Megladdery returned to the tavern and talked with Bent again about the pardon. Bent testified that Megladdery told him that an attorney was necessary, and recommended Geary, an Oakland attorney. Bent went to see Geary on March 1, 1938,

the date set forth in the indictment as the date the crimes were committed. Megladdery's name was on the office door together with that of Geary. Bent testified that he told Geary that Megladdery had sent him to see him about the Leddy pardon. During the conversation Geary telephoned both Frank Cochran, another secretary of Merriam's, and Megladdery. Geary's and Bent's stories differ as to what was said by each other, and what was said by Geary to the two secretaries. At any rate, Bent on that date paid Geary $750 in cash and received from Geary a receipt reciting payment "on acct. of Atty. fees *in re* commutation of sentence". Bent testified that he informed Geary of the understanding with Megladdery, and told him the $750 was part of the $2,000 agreed upon. Geary testified he had no knowledge of the Bent-Megladdery agreement; that, according to his understanding, Bent came to him upon the suggestion of Megladdery with the object of securing legitimate services of Geary as attorney in seeking a pardon for Leddy. Geary claims the $750 payment was on account of attorney fees for that legitimate purpose and was not part of the $2,000 agreed upon, of which he had no knowledge.

Subsequently, Megladdery saw Bent in San Francisco. Bent told him about seeing Geary and the payment of the $750 to him. Megladdery said that was all right but that he, Megladdery, needed some money. Bent then paid Megladdery $500 in San Francisco, and Megladdery gave him a receipt written on the back of Megladdery's official card reading as follows: "Received from Clarence Bent $500 Merriam campaign. Mark Lee Megladdery". Bent told Megladdery at that time that this meant he had paid $1250 of the $2,000 agreed upon, leaving a balance of $750. Megladdery approved this statement of the account. There were other transactions in San Francisco and Sacramento not necessary to here recount. Some time later Megladdery saw Bent in San Francisco and told him to see Geary and get the money back he had paid to him. On April 5, 1938, Bent again visited Geary in Oakland. Again there is a dispute as to what the conversation was, but both Geary and Bent testified that Geary returned $500 of the $750 received, Geary retaining $250 as a fee for services rendered. Thereafter, in San Francisco and in Sacramento, Bent kept asking for the pardon and Megladdery kept asking for more money. The

matter was delayed until near the end of the year, when Bush, of the Board of Prison Terms and Paroles, visited Bent and secured a statement from him.

It is clear from the above short recital of the facts that, although, according to the prosecution's evidence, both crimes charged in counts one and two of the indictment were committed, as to their essential elements, in San Francisco, under section 781 of the Penal Code as interpreted above sufficient acts were committed in Alameda County to give that county jurisdiction, if that testimony was believed by the jury and trial judge. This is so although Geary was found by the jury to be innocent. The rule is elementary and needs no supporting authority that a defendant may commit a crime although not personally present in the jurisdiction. This may be done through an agent—even an innocent agent. So far as the charge of *soliciting* a bribe is concerned, if Bent is to be believed, Geary (even though innocent) was acting as the agent of Megladdery in renewing or repeating the solicitation in Alameda County. So far as the asking and agreeing to receive a bribe is concerned, again the case is one where the "effects . . . requisite to the consummation of the offense" occurred in Alameda County within the meaning of section 781. Clearly, if Bent is to be believed, acts requisite to the achievement or end of the unlawful purpose occurred in Alameda County. If Bent's story on the new trial is believed by both the court and jury, the evidence will be sufficient to sustain the verdicts.

*Respondent's seven grounds, independently of the question of venue, urged in support of the granting of the motion for a new trial.*

In addition to the question of venue, respondent urges seven other grounds upon which the motion for a new trial could have been granted. These will be considered in the order urged by him.

1. It is first urged that the verdicts of guilty on the two counts are inconsistent. It is contended that count one charges Megladdery with soliciting Bent to offer or join in an offer to bribe the then governor, in order to unlawfully influence *the governor* to grant a pardon to Leddy, while count two charges the asking and agreeing to receive a bribe from Bent to unlawfully influence *Megladdery* in connection with the Leddy pardon. There is no inconsistency between the

two counts. In *People* v. *Werner*, 29 Cal. App. (2d) 126 [84 Pac. (2d) 168], relied upon by respondent, the facts were that the complaining witness was under indictment. The Werners attempted to obtain from him $2,500 under representations that the money would be used to bribe the chief deputy district attorney who was to prosecute the case. One count charged the defendants with having solicited the complaining witness to offer or join in an offer to bribe the chief deputy district attorney. This count was predicated on the theory that the representations were made by the defendants in good faith and that the money would be used for the purposes represented. The defendants were also convicted under another count of an attempt to commit grand theft. This count was predicated upon the theory that the representations were made in bad faith and that the $2,500 was to be converted by defendants to their own use. The appellate court held that the defendants could have had the intent to commit either of the crimes, but could not, by the same acts, have had the intention to commit both crimes—the two intents were necessarily inconsistent. But that is not this case. This case falls under the rule, mentioned in the Werner case, *supra*, that a person may be convicted of two crimes growing out of one transaction when they constitute separate and distinct crimes. Here Megladdery was charged with, and the evidence if believed would have been sufficient to convict him of, two separate crimes—soliciting a bribe for the purpose of influencing the governor, and asking and agreeing to receive a bribe to influence his own official actions. The same acts were intended to corrupt both officials.

2. Respondent next contends that the trial court erred in instructing the jury as to when Alameda County has jurisdiction. The instruction in question is not as clear as might be desired. It somewhat confused the question of venue over the crimes charged in the conspiracy counts (counts 6 and 7) and the crimes charged in counts 1 and 2. As to whether the instruction is sufficiently confusing to have warranted the trial court in granting the motion for a new trial need not now be decided. Inasmuch as Megladdery was acquitted of the conspiracy charges, the same complaint will not arise on the new trial.

3. It is next urged that the second count of the indictment does not state a public offense, and that respondent's

demurrer to that count should have been sustained. The de-
murrer was based on the theory that count two of the indict-
ment does not allege what the official duties of Megladdery
as private secretary to the governor were, and does not allege
that he had any duties at all in connection with pardons. So
far as pertinent here, count two reads as follows:

"that the said MARK LEE MEGLADDERY, JR. was
then and there an executive and ministerial officer, employee
and appointee of the State of California and was then and
there the duly appointed, qualified and acting private secre-
tary to the Governor of the State of California; that while
the said MARK LEE MEGLADDERY, JR. was such execu-
tive and ministerial officer, employee and appointee of the
State of California, as aforesaid, the said MARK LEE MEG-
LADDERY, JR. and EDWIN W. GEARY did then and
there ask and agree to receive from one Clarence Bent a
bribe, to-wit, Two Thousand Dollars ($2,000.00), more or less,
lawful money of the United States, upon an agreement and
understanding and with the corrupt intent that the opinion
and action of the said MARK LEE MEGLADDERY, JR.
upon a matter then pending and which might be brought
before the said MARK LEE MEGLADDERY, JR. in his
official and public capacity as aforesaid, should be unlaw-
fully influenced thereby in the manner following, to-wit, that
the said MARK LEE MEGLADDERY, JR. as such executive
and ministerial officer, employee and appointee would approve,
recommend, obtain and procure for one Clarence A. Leddy,
a pardon from the Governor of the State of California and
would use his influence to persuade the Governor of the
State of California to grant a pardon to the said Clarence
A. Leddy."

Respondent contends that the crime of asking for, or agree-
ing to receive, a bribe can only occur when the act sought
to be influenced is an act imposed by law as an official duty
of the public officer involved, and that it is necessary to
allege that the law imposed upon the defendant such official
duty. This is a much too broad statement of the rule. It
is sufficient to charge and prove that the subject matter upon
which the bribe was to operate existed and could be brought
before the public officer in his official capacity. The fact
the duty is not specifically conferred upon the officer by
statute is immaterial. (*People* v. *Markham,* 64 Cal. 157 [30

Pac. 620, 49 Am. Rep. 700] ; *People* v. *Mechler,* 75 Cal. App. 181 [242 Pac. 503] ; *Harris* v. *Superior Court,* 51 Cal. App. 15 [196 Pac. 895] ; *People* v. *Vincilione,* 17 Cal. App. 513 [120 Pac. 438] ; *Krichman* v. *United States,* 263 Fed. 538; *United States* v. *Birdsall,* 233 U. S. 223 [34 Sup. Ct. 512, 58 L. Ed. 930].)

The indictment charges Megladdery with being an executive and ministerial officer of the state, that is, the private secretary to the governor, and that in that capacity he asked and agreed to receive from Bent a bribe with the intent that his action ''upon a matter then pending and which might be brought before'' him in his official capacity should be unlawfully influenced. This sufficiently charged the offense.

4. It is next urged that the evidence is insufficient to establish the charge set forth in count two of the indictment. This contention is largely based on the arguments urged in support of the contention that the indictment was defective, and for the same reasons is without merit. In addition, respondent points out that Governor Merriam testified that at no time that Megladdery was his private secretary was it ever a part of his duties to investigate, recommend, grant or procure pardons for any person—that it was the duty of another secretary to assist him with pardon applications. Obviously, the official duty of assisting the governor in this regard was imposed on the department of which Megladdery was a member, and, if requested to do so, Megladdery could have performed the work of the secretary assigned to the duty of passing upon applications for pardons. That is all that is required under the above-cited cases. Any other rule would permit public servants to be false to their trust and still escape liability on the highly technical ground that the particular act for which the bribe was solicited, because of inter-departmental division of work, did not fall within the officer's particular functions, although he could be asked to perform that act at any time.

5. It is next urged that an instruction embodying respondent's theory in reference to the charge in count two was improperly refused. This contention is without merit for the reasons set forth in the discussion of points four and five.

6. It is next urged that the evidence was insufficient to warrant respondent's conviction on count one. This is

the count that charges Megladdery with soliciting Bent to offer or join in an offer of a bribe to the governor in the matter of the Leddy pardon. It is urged that nowhere in the record is there any evidence that Megladdery intended that Bent should bribe Governor Merriam, or that Bent ever understood that Governor Merriam was to be bribed. This is largely a matter of intent which must be gathered from the surrounding circumstances. Only Governor Merriam had the power of extending clemency to Leddy. The money was solicited not for Megladdery directly, but for Merriam's campaign fund. Megladdery guaranteed to Bent that if the contribution was made, the pardon would be granted. It is not charged that Merriam was corruptly influenced, simply that the money was solicited by Megladdery with that intent. From all of these and other circumstances, the jury could have inferred that the money was solicited to corruptly influence Governor Merriam, although there is no evidence that at the time he had any knowledge of the activities of Megladdery and Bent.

7. The next and last point urged is that the court erred in refusing to strike out certain testimony given by the witness Earl Warren. Warren was permitted to testify over respondent's objections concerning a conversation had with Megladdery on January 3, 1939. It is charged that the conversation was in the nature of an accusatory statement, that Megladdery denied the accusation, and that, therefore, it should not have been admitted. It is, of course, the rule that an out-of-court accusation, denied by the accused, is inadmissible. (*People* v. *Teshara,* 134 Cal. 542 [66 Pac. 798]; *People* v. *Weber,* 149 Cal. 325 [86 Pac. 671]; *People* v. *Zoffel,* 35 Cal. App. (2d) 215 [95 Pac. (2d) 160].) But the proffered testimony here was not merely an accusation and a denial, but also a purported explanation by Megladdery. This statement contained many false, evasive and contradictory statements. The rule is clear that a statement by the defendant made in answer to an accusatory statement, containing not only a denial but also false and evasive statements, is admissible. The reason that a denied accusatory statement is refused admission is that the issue involved is the conduct of the accused in the face of the accusation. Where the accusation is denied, the accusation, which is merely admitted to explain the conduct of the accused, has

no evidentiary force. But where the conduct of the accused in the face of the accusation is of evidentiary importance, such as where false and evasive replies are made together with a denial, the conduct of the accused is admissible as showing a consciousness of guilt and the accusation is admissible to explain that conduct. Such is this case. (*People* v. *Miller*, 19 Cal. App. (2d) 708 [66 Pac. (2d) 448]; *People* v. *Zabriski*, 135 Cal. App. 169 [26 Pac. (2d) 511]; *People* v. *Scott*, 84 Cal. App. 642 [258 Pac. 638].)

*Conclusion.*

In concluding this opinion we think it is proper to state that by affirming the order of the trial court, this court has not relied on technical rules to condone a miscarriage of justice, as contended by the attorney-general. ▆▆▆ It is a fundamental and sound doctrine of criminal law, adopted in order to prevent miscarriages of justice, that the trial judge has the power, and it is his duty, to weigh the evidence and to act as a thirteenth juror. As already pointed out, he has the power, and it is his duty, to override the verdict of the jury when, in his opinion, the evidence offered on some element of the prosecution's case is not convincing to him. In this case we must hold that the trial judge in the proper exercise of that function weighed the evidence, and, so far as it dealt with jurisdiction in Alameda County is concerned, found it was not sufficient to convince him. That is a matter solely within his power. This court is not permitted to overrule that discretion.

The order appealed from is affirmed.

Knight, J., and Ward, J., concurred.